[Crim. No. 22295. July 7, 1983.]

THE PEOPLE, Plaintiff and Respondent, v.
CHARLES HARRY WOLCOTT, Defendant and Appellant.

THE PEOPLE, Plaintiff and Respondent, v.
ROBERT RUSSELL JOHNSTON, Defendant and Appellant.

## COUNSEL

Quin Denvir, State Public Defender, and Fred F. Ruegg, under appointments by the Supreme Court, Dorothy P. Young, under appointment by the Court of Appeal, and George L. Schraer, Deputy State Public Defender, for Defendants and Appellants.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Edward P. O'Brien and William D. Stein, Assistant Attorneys General, Kenneth C. Young, W. Eric Collins, Robert R. Granucci, Frances Marie Dogan and Paul D. Gifford, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**BROUSSARD, J.**—Defendants Robert Johnston and Charles Wolcott bring a consolidated appeal from judgments of conviction for robbery, attempted robbery, and other crimes. They raise several contentions, which we resolve as follows:

(1) We reject Johnston's contention that the trial court should have instructed *sua sponte* that assault with a deadly weapon is a lesser included offense in a charge of robbery enhanced by use of a firearm. As we explain, the contention fails on three grounds: assault is not a lesser included offense in robbery; a "use" enhancement is not part of the accusatory pleading for the purpose of defining lesser included offenses; and in any case one can "use" a firearm in a robbery without employing it to assault the robbery victim.

(2) We reject Johnston's contention that the trial court erred in imposing a three-year enhancement under Penal Code section 667.5 because of a prior prison term for a violent felony. Notwithstanding language in *People* v. *Harvey* (1979) 25 Cal.3d 754 [159 Cal.Rptr. 696, 602 P.2d 396] discussing the interplay of section 667.5 and section 1170.1, the clear and unambiguous provisions of section 667.5 standing alone require us to classify robbery with firearm use as a violent felony for the purpose of an enhancement based upon a prior prison term.

(3) We find substantial evidence to support the finding that Wolcott intentionally inflicted great bodily injury on Jessie King, the victim of an attempted robbery. Wolcott intentionally shot King, and although King's injuries were fortunately less serious than is typical of gunshot wounds, they were substantial enough to justify the jury's finding. We observe no error in the jury instructions on this issue.

1. *Summary of Facts*

About 12:45 a.m. on August 4, 1979, Johnston and Wolcott entered the Valeno Club, a bar in Vallejo. After ordering beers, they accused Della Stennett, the bartender, of stealing a dollar. While Wolcott searched his pocket for the missing dollar, Johnston walked to the door, turned, drew a gun, and announced "This is a hold up." He ordered Stennett to give him the money in the cash register, and she handed him $300 or $400. Johnston then locked Stennett and three customers in the cooler.

Johnston and Wolcott left the club and went to the house of Muriel Wolcott, defendant Wolcott's mother, where they showed Muriel the guns and the money. They told her that they had robbed a bar, Johnston taking the money while Wolcott acted as the lookout.

A month later, on September 3, 1979, defendants attempted a second robbery. Johnston entered the King's Market, a grocery store in Benicia, while Wolcott got into a cab waiting outside the store. Johnston came out, talked to Wolcott, and took his place in the cab. Wolcott entered the store

and asked Jessie King, the proprietor, for a half pint of gin. When King rang the sale on the register, Wolcott drew a pistol and ordered King to leave the cash drawer open. Wolcott then laid the gun on the counter, perhaps to pick up the money, and King tried to take the gun. The two men struggled for it, with Wolcott holding the handle with his finger on the trigger. Wolcott pulled the trigger several times, but King got his hand between the hammer and the firing pin so the gun could not fire. As they continued to struggle, King fell to his knees and lost his grip on the gun. Wolcott again pulled the trigger. A bullet struck King in the calf, and fragments lodged in his arms and legs. We discuss King's injuries in greater detail in part 4 of this opinion where we consider the question of whether King sustained "great bodily injury" within the meaning of Penal Code section 12022.7.

Wolcott left the store without taking anything and entered the cab. He pointed the gun at Claude Jones, the driver, and ordered him to "drive where I want you to go." Johnston asked Jones for money, but Jones said he had just started work and had no cash. When defendants noticed police cars pursuing the cab, they ordered Jones to drive to a school yard where they got out and tried to flee. After an exchange of shots, defendants were subdued and arrested.

In connection with the August 4 incident, the jury found both defendants guilty of the robbery of Della Stennett and the false imprisonment of Stennett and the customers of the Valeno Club.[1] With regard to the events of September 3, it found Wolcott guilty of attempted robbery of King, and assault with a deadly weapon on King; it also determined that Wolcott intentionally inflicted great bodily injury during the commission of the attempted robbery and the assault. The jury found both defendants guilty of the attempted robbery of Jones and the false imprisonment of Jones (as a lesser included offense in the charge of kidnaping for robbery), but acquitted them on a charge of assault on a police officer. Finally, the jury found that Johnston personally used a firearm in the robbery of Stennett and the false imprisonment of the Valeno Club customers; Wolcott personally used a firearm in the assault and attempted robbery of King and the false imprisonment of Jones.

In sentencing Johnston, the court treated the robbery of Stennett as the principal offense. It imposed the upper term of five years, plus two years enhancement for use of a firearm (Pen. Code, § 12022.5) and three years

---

[1]Although Wolcott asserts that no substantial evidence links him to the Valeno Club crimes, the testimony of Della Stennett describing the crimes and of Muriel Wolcott recounting defendants' confession constitutes substantial evidence supporting Wolcott's conviction.

for service of a prior prison term for a violent felony (Pen. Code, § 667.5). The court imposed concurrent sentences for all other crimes.

In sentencing Wolcott, it used the conviction for attempted robbery of King as the principal offense. Wolcott received the upper term of three years for that offense, plus two years enhancement for use of a firearm (Pen. Code, § 12022.5) and three years for intentional infliction of great bodily injury (Pen. Code, § 12022.7). The court imposed a consecutive sentence of one year (one-third of the middle term) for the robbery of Stennett, and concurrent sentences on the other counts.

2. *Assault With a Deadly Weapon Is Not a Lesser Included Offense Under a Charge of Robbery With an Enhancement for Use of a Firearm.*

Defendant Johnston was convicted of the robbery of Della Stennett and the attempted robbery of Claude Jones. While Johnston does not deny that he took money at gunpoint from Stennett, and attempted to take money from Jones, he claims that because of diminished mental capacity, exacerbated by alcohol, he lacked the intent essential to the crimes of robbery or attempted robbery. Relying on that evidence, Johnston contends that the court should have instructed *sua sponte* on the uncharged lesser crime of assault with a deadly weapon. Such an instruction would be proper only if that uncharged crime is necessarily included in an accusatory pleading charging robbery with a firearm use enhancement.

An uncharged crime is included in a greater charged offense if either (a) the greater offense cannot be committed without committing the lesser, or (b) the language of the accusatory pleading encompasses all the elements of the lesser offense. (*People* v. *St. Martin* (1970) 1 Cal.3d 524, 536 [83 Cal.Rptr. 166, 463 P.2d 390]; *People* v. *Marshall* (1957) 48 Cal.2d 394 [309 P.2d 456].) Johnston's argument depends on a combination of both alternatives. First, he must show that simple assault is necessarily included within the crime of robbery. Then, to add the element of a deadly weapon, he must show both that an enhancement is part of the accusatory pleading for the purpose of determining included offenses, and that a "use" enhancement signifies that the defendant used a deadly weapon in committing the assault. His argument fails at each step.

We recognize that numerous California cases have asserted generally that robbery is a combination of assault and larceny. (E.g., *People* v. *Fries* (1979) 24 Cal.3d 222, 229 [155 Cal.Rptr. 194, 594 P.2d 19]; *People* v. *Rist* (1976) 16 Cal.3d 211, 220 [127 Cal.Rptr. 457, 545 P.2d 833]; *People* v. *McGreen* (1980) 107 Cal.App.3d 504, 509 [166 Cal.Rptr. 360]; *People* v. *Salas* (1978) 77 Cal.App.3d 600, 607 [123 Cal.Rptr. 903]; *People*

*Sutton* (1973) 35 Cal.App.3d 264, 270 [110 Cal.Rptr. 635]; *People* v. *Guerin* (1972) 22 Cal.App.3d 775, 781-782 [99 Cal.Rptr. 573]; *People* v. *Foss* (1927) 85 Cal.App. 269, 272 [259 P. 123].) Such language may serve as a thumbnail description of robbery, but it lacks the precision and exactness required in determining whether one offense is necessarily included in another.

■ When the accusatory pleading describes a crime in the statutory language, as in the present case, the test for a lesser included offense is simply that, where the charged "offense cannot be committed without necessarily committing another offense, the latter is a necessarily included offense." (*People* v. *Greer* (1947) 30 Cal.2d 589, 596 [184 P.2d 512]; *People* v. *Anderson* (1975) 15 Cal.3d 806, 809 [126 Cal.Rptr. 235, 543 P.2d 603].) Thus we must inquire in the present case whether robbery, the greater offense, can be committed without necessarily committing an assault. If it can, assault is not a lesser included offense in robbery.

Penal Code section 240 defines assault as "[a]n unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another." So defined, assault under California law departs from the common law definition in two crucial respects. ■ First, under the California definition "a conviction for assault may not be grounded upon intent only to frighten." (*People* v. *Burres* (1980) 101 Cal.App.3d 341, 346 [161 Cal.Rptr. 593]; see *People* v. *Vidaurri* (1980) 103 Cal.App.3d 450, 463 [163 Cal.Rptr. 57]; *People* v. *Puckett* (1975) 44 Cal.App.3d 607, 614 [118 Cal.Rptr. 884].) Second, to constitute an assault, the defendant must not only intend to commit a battery (*People* v. *Rocha* (1971) 3 Cal.3d 893, 899 [92 Cal.Rptr. 172, 479 P.2d 372]); he must also have the present ability to do so. As the court stated in rejecting the common law rule, "[w]e cannot indorse those authorities, principally English, which hold that an assault may be committed by a person pointing in a threatening manner an unloaded gun at another; and this, too, regardless of the fact whether the party holding the gun thought it was loaded, or whether the party at whom it was menacingly pointed was thereby placed in great fear." (*People* v. *Lee Kong* (1892) 95 Cal. 666, 669 [30 P. 800].) Subsequent cases confirm that "if a person points an unloaded gun at another, without any intent or threat to use it as a club or bludgeon, he does not commit . . . assault under Penal Code section 240 . . . ." (*People* v. *Mosqueda* (1970) 5 Cal.App.3d 540, 544 [85 Cal.Rptr. 346]; *People* v. *Sylva* (1904) 143 Cal. 62, 64 [76 P. 814].)

■ Neither an attempt to inflict violent injury, nor the present ability to do so, is required for the crime of robbery. That offense is defined by statute as "the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished

by means of force or fear." (Pen. Code, § 211.) The fear which induces the victim to part with his property "may be either: [¶] 1. The fear of an unlawful injury to the person or property of the person robbed, or of any relative of his or member of his family; or [¶] 2. The fear of an immediate and unlawful injury to the person or property of anyone in the company of the person robbed at the time of the robbery." (Pen. Code, § 212.) Although a threat to injure the victim personally may involve an assault, a threat to injure his relatives, family members, or companions would not necessarily take that form. And it is clear that a threat to damage the victim's property, or the property of a relative, family member, or companion, would not come within the statutory definition of assault.

The threat to inflict injury required for a robbery, moreover, need not be accompanied by the present ability to carry it out. Thus, the use of an unloaded gun (see *People* v. *Aranda* (1965) 63 Cal.2d 518, 532 [47 Cal.Rptr. 353, 407 P.2d 265]; *People* v. *Raner* (1948) 86 Cal.App.2d 107, 111 [194 P.2d 37]), a toy gun (see *People* v. *Gardner* (1954) 128 Cal.App.2d 1, 4 [274 P.2d 908]) or a simulated gun (*People* v. *Gutkowsky* (1950) 100 Cal.App.2d 635, 636-637 [224 P.2d 95]) is sufficient if it causes the victim to part with his property.

█ In short, because a defendant can commit robbery without attempting to inflict violent injury, and without the present ability to do so, robbery does not include assault as a lesser offense. The addition of an allegation that defendant used a firearm within the meaning of Penal Code section 12022.5 does not alter this conclusion.

In the first place, California courts have consistently stated that "section 12022.5 does not prescribe a new offense but merely additional punishment for an offense in which a firearm is used." (*In re Culbreth* (1976) 17 Cal.3d 330, 333 [130 Cal.Rptr. 719, 551 P.2d 23]; see *People* v. *White* (1976) 16 Cal.3d 791, 795 [129 Cal.Rptr. 769, 549 P.2d 537]; *People* v. *Strickland* (1974) 11 Cal.3d 946, 961 [114 Cal.Rptr. 632, 523 P.2d 672]; *People* v. *Bush* (1975) 50 Cal.App.3d 168, 176 [123 Cal.Rptr. 572]; *People* v. *Henderson* (1972) 26 Cal.App.3d 232, 237, fn. 4 [102 Cal.Rptr. 670]; *People* v. *Henry* (1970) 14 Cal.App.3d 89, 92 [91 Cal.Rptr. 841].) Relying on such language, the majority of Court of Appeal decisions have held "that an allegation of firearm use for purposes of Penal Code section 12022.5 is not to be considered in determining whether the accusation encompasses a lesser included offense." (*People* v. *Orr* (1974) 43 Cal.App.3d 666, 673-674 [117 Cal.Rptr. 738]; accord *People* v. *Benjamin* (1975) 52 Cal.App.3d 63, 71-72 [124 Cal.Rptr. 799]; *People* v. *Wilson* (1976) 62 Cal.App.3d 370, 374 [132 Cal.Rptr. 813]; *People* v. *Salas* (1978) 77 Cal.App.3d 600,

607 [143 Cal.Rptr. 755]; *People* v. *Cole* (1979) 94 Cal.App.3d 854, 861-862 [155 Cal.Rptr. 892].)

The two decisions to the contrary, *People* v. *McGreen* (1980) 107 Cal.App.3d 504 [166 Cal.Rptr. 360] and *People* v. *Myers* (1981) 125 Cal.App.3d 735 [178 Cal.Rptr. 259], relied on the rule that an offense not necessarily included as a matter of law may become such because of the "specific language of the accusatory pleading." (*People* v. *Marshall, supra,* 48 Cal.2d 394, 405.) That rule rests on principles of due process—that a defendant cannot be convicted of a charge unless he has received notice from the accusatory pleading that he may be called upon to defend against the charge. (*In re Hess* (1955) 45 Cal.2d 171, 175 [288 P.2d 5].) The application of those principles to an enhancement allegation, however, is unclear since that allegation becomes relevant only if the defendant is convicted of the substantive crime. Thus a defendant who has a good defense to a robbery charge may not be on notice that he should nevertheless controvert a "use" enhancement to protect against conviction for a lesser offense of assault with a deadly weapon.

But even if California could constitutionally consider enhancement allegations as part of the accusatory pleading for the purpose of defining lesser included offenses, we see no reason to adopt that course. Not only is the weight of authority against it, but the result would be to confuse the criminal trial. Present procedure contemplates that the trier of fact first determines whether the defendant is guilty of the charged offense or a lesser included offense, and only then decides the truth of any enhancements. (See CALJIC No. 17.19.) The sentencing judge then decides whether to use the fact found as an enhancement to impose the upper term of the sentence, or to enhance the sentence. (Cal. Rules of Court, rule 441.) This orderly, step-by-step procedure would become muddled if evidence of the enhancement must be considered in determining guilt of a lesser offense.[2]

■ We therefore adhere to the majority view that an allegation of firearm use under section 12022.5 should not be considered in determining lesser included offense. Language to the contrary in *People* v. *McGreen, supra,* 107 Cal.App.3d 504, and *People* v. *Myers, supra,* 125 Cal.App.3d 735 is disapproved.

---

[2]Although *People* v. *Myers, supra,* 125 Cal.App.3d 744, followed *McGreen* and held that "use" allegations could be considered in framing lesser included offenses, the court recognized the pragmatic problems of that result: "We add one more burden to the already crushing load the trial court must carry. Now, in addition to searching the substantive offense in the accusatory pleading for *sua sponte* possibilities, the court must study and consider the enhancement provisions. This is no trifling matter since almost all assaultive crimes include some enhancement allegations." (P. 744.) The result we reach in the present case avoids these difficulties.

 We observe, moreover, that even if a firearm use enhancement were considered part of the accusatory pleading for the purpose of determining lesser included offense, assault with a deadly weapon still would not be included within a charge of robbery with a "use" enhancement because that enhancement does not supply the necessary elements of an attempt to inflict violent injury and present ability to do so. The menacing display of a firearm to intimidate a victim is sufficient to prove use of the firearm under section 12022.5 (*People* v. *Colligan* (1979) 91 Cal.App.3d 846, 851 [154 Cal.Rptr. 389]), but insufficient to prove assault with a deadly weapon (*People* v. *Diamond* (1939) 33 Cal.App.2d 518 [92 P.2d 486]). The use of an unloaded or inoperable gun justifies an enhanced sentence (*People* v. *Nelums* (1982) 31 Cal.3d 355, 359 [182 Cal.Rptr. 515, 644 P.2d 201]; *People* v. *Torres* (1971) 19 Cal.App.3d 724 [97 Cal.Rptr. 139]), but, as we have seen, does not support a conviction for assault.[3] Finally, a gun may be used in a robbery within the scope of section 12022.5 without it being used to threaten or injure the victim. If, for example, a defendant robbed one man, then drew a gun and shot a bystander who tried to obstruct his escape, the defendant would be guilty of both robbery (with use of a firearm) and assault with a deadly weapon, but neither crime would be included in the other.

We conclude that under the statutory definitions of robbery, assault, and use of a firearm, the offense of assault with a deadly weapon is not a lesser included offense in a charge of robbery with a "use" enhancement. Accordingly, the trial court did not err in failing to instruct *sua sponte* on such offense.

3. *Defendant Johnston's Sentence Was Properly Increased by Three Years Because of His Prior Prison Term for Robbery With Use of a Firearm.*

Penal Code section 667.5 provides for the enhancement of prison terms because of prior terms. It reads in relevant part:

"Enhancement of prison terms for new offenses because of prior prison terms shall be imposed as follows:

"(a) Where one of the new offenses is one of the violent felonies specified in subdivision (c), . . . the court shall impose a three-year term for each prior separate prison term served by the defendant where the prior was one of the violent felonies specified in subdivision (c); . . .

---

[3]Johnston points out that even an unloaded or inoperable gun can be "used" as a club to threaten the robbery victim. (See *People* v. *Aranda* (1965) 63 Cal.2d 518, 532 [47 Cal.Rptr. 353, 407 P.2d 265].) But a robbery can be consummated without the robber approaching the victim closely or threatening to strike the victim with the gun.

"(b) Except where subdivision (a) applies, . . . the court shall impose a one-year term . . . .

"(c) For the purpose of this section 'violent felony' shall mean any of the following:

"(1) Murder or voluntary manslaughter.

"(2) Mayhem.

"(3) Rape as defined in . . . subdivision (2) . . . of section 261.

"(4) Sodomy by force, violence, duress, menace, or threat of great bodily harm.

"(5) Oral copulation by force, violence, duress, menace, or threat of great bodily harm.

"(6) Lewd acts on a child under 14 as defined in Section 288.

"(7) Any felony punishable by death or imprisonment in the state prison for life.

"(8) Any other felony in which the defendant inflicts great bodily injury on any person other than accomplice . . . or *any felony in which the defendant uses a firearm* which use has been charged and proved as provided in Section 12022.5." (Italics added.)

In 1971, Johnston was convicted of robbery with the use of a firearm and served a prison sentence for that offense. Robbery is not among the crimes specifically named in subdivision (c) of section 667.5, but the firearm use brings Johnston's conviction within the language of subpart (8)—"any felony in which the defendant uses a firearm which use has been charged and proved as provided in Section 12022.5." The trial court accordingly enhanced Johnston's sentence by three years. Johnston argues that under *People* v. *Harvey, supra*, 25 Cal.3d 754 and *People* v. *Davis* (1980) 103 Cal.App.3d 270 [163 Cal.Rptr. 22], robbery or other felonies not specifically named in subparts (1) through (7) of subdivision (c) cannot be used to support a three-year enhancement.

In *People* v. *Harvey, supra*, 25 Cal.3d 754, we considered the enhancement of a subordinate term for firearm use, a matter governed by section 1170.1. That section provided that the subordinate term for a consecutive offense shall exclude any enhancement for firearm use "when the consecu-

tive offense is not listed in subdivision (c) of Section 667.5, but shall include one-third of any enhancement . . . when the consecutive offense is listed in subdivision (c) . . . ."

Reading this language in conjunction with section 667.5, section 1170.1 appeared to permit enhancement of subordinate terms for firearm use only for felonies listed in subdivision (c), and not otherwise, yet subdivision (c) includes all felonies in which a firearm is used. Thus a literal reading of the two sections would have rendered meaningless section 1170.1's distinction between cases in which enhancement of a subordinate term for firearm use is proper and those in which it is not. Such a reading would also render redundant section 1170.1's language referring to the felonies described in section 667.5. We therefore concluded in *Harvey* that section 1170.1 permits enhancement of a subordinate term only if the enhancing conduct (use of a gun, or infliction of great bodily injury) occurred during the commission of a felony specifically listed in subdivision (c).[4]

*Harvey* did not discuss enhancements based on a prior prison term. The Court of Appeal in *People* v. *Davis, supra,* 103 Cal.App.3d 270, however, reasoned that "[t]he determination in *Harvey* that a robbery with use of a firearm is not a violent felony under section 1170.1, subdivision (a) governs our analysis of the section before us—667.5, subdivision (a). Following *Harvey*, it would be equally anomalous to hold an armed robbery is a violent felony *only* where it is alleged as a prior, but not where it is used to increase the subordinate term under section 1170.1, subdivision (a). Implicitly, the *Harvey* court held that the legislative intent of the provision (§ 1170.1, subd. (a)) prohibited the dual use of a section 12022.5 finding." (*Id.,* at pp. 278-279.)

Subsequent to *Davis,* however, we took another look at the question of enhancements under sections 667.5 and 1170.1. *People* v. *Hernandez* (1981) 30 Cal.3d 462 [179 Cal.Rptr. 239, 637 P.2d 706] involved a portion of section 1170.1 not considered in *Harvey* which placed a five-year maximum on the total of subordinate terms for offenses not listed in section 667.5, subdivision (c). The question before us was whether the trial court could impose a total of subordinate terms exceeding five years for various counts of robbery and assault with firearm use. Our decision noted that the

---

[4]After our decision in *People* v. *Harvey, supra,* 25 Cal.3d 754, the Legislature amended section 1170.1 to provide for enhancement of the subordinate term for every felony described by subpart (8)—in effect, for any felony in which a firearm is used or great bodily injury inflicted. (Stats. 1980, ch. 132, § 2, eff. May 29, 1980.) That enactment, however, does not apply to the crimes committed before its effective date. (See *People* v. *Vizcarra* (1980) 110 Cal.App.3d 858, 866 [168 Cal.Rptr. 257]; *People* v. *Fulton* (1980) 109 Cal. App.3d 777, 783 [167 Cal.Rptr. 436].)

rationale of *Harvey*, the avoidance of the linguistic anomaly, "does not apply to the limitation on the *total* of subordinate terms. There is no inconsistency or redundancy in interpreting section 1170.1 to permit unlimited subordinate terms for the enumerated crimes in subdivision (c) of section 667.5 *as well as* for 'any other felony' where great bodily injury was inflicted or in which a firearm was used. . . . [T]he use of the statutory definition in section 667.5 to permit unlimited total subordinate terms for consecutive offenses is entirely harmonious with the related provisions. We see no reason not to abide by the clear letter of the statute and the legislative intent manifested by the incorporation of the statutory definition of 'violent felony.'" (Pp. 466-467.) In short, *Hernandez* refused to extend *Harvey* beyond that limited area in which a literal reading of sections 667.5 and 1170.1 results in inconsistency and redundancy; when a straightforward construction of the statutory language yields a clear and harmonious result, the court should follow that construction.

We believe that the reasoning of *Hernandez,* not that of *Harvey,* controls the present case. (Two recent Court of Appeal opinions, *People* v. *Flowers* (1982) 132 Cal.App.3d 584 [183 Cal.Rptr. 276] and *In re Hall* (1982) 132 Cal.App.3d 525 [183 Cal.Rptr. 560], reach the same conclusion.) This case does not involve section 1170.1; we are concerned solely with the interpretation of section 667.5. Taking that section on its face, no inconsistency or anomaly arises from permitting the imposition of a three-year enhancement for prior prison terms for all violent felonies as defined in that section, that is, the specified felonies plus any others involving infliction of great bodily injury or use of a firearm. (*In re Hall, supra,* 132 Cal.App.3d 525, 531.) A contrary interpretation, on the other hand, would essentially nullify subpart (8), giving no effect to the legislative intent to punish more severely when the prior term involved a felony with great bodily injury or firearm use. (See *People* v. *Flowers, supra,* 132 Cal.App.3d 584, 592-593.)

Defendant argues of course that it is inconsistent to treat robbery with a firearm use as a violent felony for purpose of enhancement for a prior prison term but not for purpose of enhancement of subordinate terms. ▆ ▆▆▆ ▆ In *Hernandez*, however, we decided that it is better to interpret the term "violent felony" differently in different contexts than to let the *Harvey* interpretation of that phrase—an interpretation devised to correct a particular linguistic anomaly in the interplay of sections 667.5 and 1170.1—control in cases where it would defeat the clear meaning and purpose of the statute.[5] ▆ Adopting the *Hernandez* analysis in the present case, we

---

[5]We recognized in *Hernandez* that "our interpretation gives to the phrase 'consecutive offenses not listed in subdivision (c) of section 667.5' a different meaning in two parts of the same statute [section 1170.1]." (30 Cal.3d at p. 468.) But although it is generally presumed that a phrase bears the same meaning throughout a statute, "'[w]hen the occasion

conclude that the trial court correctly found that robbery with a firearm use was a violent felony under section 667.5, and imposed a three-year enhancement.[6]

*4. The Jury Properly Found That Defendant Wolcott Intentionally Inflicted Great Bodily Injury on Jessie King.*

Penal Code section 12022.7 provides that "Any person who, with the intent to inflict such injury, personally inflicts great bodily injury on any person other than an accomplice in the commission or attempted commission of a felony shall . . . be punished by an additional term of three years . . . ." The statute defines great bodily injury as "a significant or substantial physical injury."[7] The jury, instructed in the statutory language, found that Wolcott intentionally inflicted great bodily injury on Jessie King during the attempted robbery of September 3, 1979. The trial court accordingly increased Wolcott's sentence for that robbery by an additional term of three years.

Wolcott primarily contends that the injuries he inflicted were not, as a matter of law, "significant or substantial" injuries. He also argues that the trial court erred in failing to instruct that "minor or moderate" injuries are not within the scope of the section, and in failing to instruct that if the

---

demands it, the same word may have different meanings to effectuate the intention of the act in which the word appears.'" (P. 468, quoting *Anderson* v. *City of Los Angeles* (1973) 30 Cal.App.3d 219, 224 [106 Cal.Rptr. 299].)

[6]Language in *People* v. *Davis, supra,* 103 Cal.App.3d 270, inconsistent with the views expressed herein, is disapproved.

[7]As originally enacted in 1976, section 12022.7 provided that:

"As used in this section 'great bodily injury' means a serious impairment of physical condition, which includes any of the following:

"(a) Prolonged loss of consciousness.

"(b) Severe concussion.

"(c) Protracted loss of any bodily member or organ.

"(d) Protracted impairment of function of any bodily member or organ or bone.

"(e) A wound or wounds requiring extensive suturing.

"(f) Serious disfigurement.

"(g) Severe physical pain inflicted by torture." (Stats. 1976, ch. 1139, § 306, p. 5163.)

This detailed definition of great bodily injury, however, was short-lived. In 1977 the Legislature amended section 12022.7 to strike out the detailed definition of great bodily injury and to substitute the statement that: "As used in this section, great bodily injury means a significant or substantial physical injury." (Stats. 1977, ch. 165, § 94.) In *People* v. *Caudillo* (1978) 21 Cal.3d 562, 581-582 [146 Cal.Rptr. 859, 580 P.2d 274], this court explained the intent of the 1977 amendment to section 12022.7: "[T]he 1977 amendment to Penal Code section 12022.7 was not intended to lessen the magnitude of bodily injury required by the 1976 detailed definition of great bodily injury. Rather, it appears that the 1977 amendment to Penal Code section 12022.7 was designed to preclude the possibility that the 1976 detailed definition of great bodily injury be construed as all inclusive, leaving no latitude to the trier of fact to find a bodily injury of equal magnitude to the categories specified in the detailed definition but not coming literally within any category set forth therein."

circumstantial evidence bearing on Wolcott's intent to inflict great bodily injury was susceptible of two reasonable interpretations, it should adopt that more favorable to the defendant.

We first review the evidence. During the struggle between Wolcott and King for possession of Wolcott's gun, Wolcott continually pulled the trigger but King managed to prevent the hammer from striking. Wolcott pushed King to his knees, obtained control of the pistol, and pulled the trigger again. The bullet struck King in the leg and shattered.

Dr. Merle Sogge, the treating physician, described King's injuries. The bullet made an apparent entrance wound six or seven inches long in King's calf, tearing the muscle tissue. The shattered bullet fragments cut King's arms and legs. Six or seven fragments lodged in his arms. Dr. Sogge removed one fragment about an inch deep under local anaesthetic, and probed unsuccessfully for other fragments. He left the other fragments in King's arm to work their way out naturally. King lost little blood, and no sutures were used. He was released from the hospital after treatment and went to work the next day. He has no permanent disability, but feels pain when his arm is touched near the unremoved bullet fragments.

We reject Wolcott's request that we decide whether he inflicted great bodily injury as an issue of law. ▆▆▆ As the court explained in *People* v. *Salas, supra,* 77 Cal.App.3d 600, "Whether the harm resulting to the victim of a robbery constitutes great bodily injury is a question of fact for the jury. [Citation.] If there is sufficient evidence to sustain the jury's finding of great bodily injury, we are bound to accept it, even though the circumstances might reasonably be reconciled with a contrary finding." (P. 606.) In similar language, *People* v. *Jaramillo* (1979) 98 Cal.App.3d 830 [159 Cal.Rptr. 771], observed that "A fine line can divide an injury from being significant or substantial from an injury that does not quite meet the description. Clearly it is the trier of fact that must in most situations make the determination." (P. 836.)

Wolcott relies on *People* v. *Caudillo, supra,* 21 Cal.3d 562, in which we held that various physical effects—gagging, vomiting, defecation, and superficial cuts—suffered during a violent sexual attack did not constitute great bodily injury. Describing such injuries as "transitory and short-lived bodily distress" (p. 588), we concluded that they did not fall within the statutory definition of "significant or substantial physical injury" (p. 589).

Subsequent decisions, however, indicate that injuries slightly more severe than those sustained by the victim in *Caudillo* will qualify as "great bodily injury." *People* v. *Williams* (1981) 115 Cal.App.3d 446 [171 Cal.Rptr.

401], like *Caudillo,* involved injuries inflicted during a rape, but the victim in *Williams,* a virgin, suffered genital tearing, trauma, and pain. In *People* v. *Sanchez* (1982) 131 Cal.App.3d 718 [182 Cal.Rptr. 671], another rape case, the victim incurred multiple abrasions and lacerations. In *People* v. *Jaramillo, supra,* 98 Cal.App.3d 830, the child victim of a beating suffered bruising and swelling on her hands, arms, and buttocks. In *People* v. *Salas, supra,* 77 Cal.App.3d 600, the robbery victim had a broken nose, one tooth knocked out, and cuts requiring three or four sutures. In each of these cases the Court of Appeal upheld a verdict finding great bodily injury.

██ The injuries in the present case are more substantial than those in *Caudillo.* King's penetrating wounds cannot be described as "superficial," and in as much as some fragments remain in his body the injury is not a "short-lived" or "transitory" one. The injuries thus resemble those found sufficient to support a verdict of great bodily injury in the cited Court of Appeal decisions.

Moreover, *Caudillo* and *People* v. *Schoenfeld* (1980) 111 Cal.App.3d 671 [168 Cal.Rptr. 762] are distinguishable on another ground. In both cases the court was concerned that the physical manifestations of the psychological stress ordinarily caused by rape (*Caudillo*) or kidnaping (*Schoenfeld*) would be used to support a great bodily injury enhancement. Such an enhancement would be inconsistent with the statutory purpose of deterring the use of excessive force and the infliction of additional harm beyond that inherent in the crime itself. (See *People* v. *Ramirez* (1979) 93 Cal.App.3d 714, 725 [156 Cal.Rptr. 94].) In the present case the injury to Jessie King was not merely a physical effect of the shock and fear commonly felt by robbery victims, but the result of an additional violent act beyond that of robbery itself.

We conclude that the jury's finding of great bodily injury is supported by substantial evidence. ██ Wolcott maintains, however, that the jury was not properly instructed on that issue. He first argues that the court erred in instructing the jury under the 1977 version of CALJIC No. 17.20 that great bodily injury "means a significant or substantial physical injury" and not according to the 1979 revision which adds that "[m]inor or moderate injuries of a temporary character do not constitute great bodily injury . . . ."

The 1979 revision of CALJIC No. 17.20 had not been published and distributed at time of trial. The earlier 1977 instruction, defining great bodily injury in the statutory language, was unquestionably correct and adequate to present the issue to the jury. The trial court cannot reasonably be expected to attempt to revise or improve accepted and correct jury instructions

absent some request from counsel. We therefore find no error in its failure to anticipate the 1979 revised instruction.

Wolcott also argues that the court erred in failing to give CALJIC No. 2.02 relating to the proof of specific intent to inflict great bodily injury by circumstantial evidence. That instruction provides generally that if evidence of specific intent "is susceptible of two reasonable interpretations, one of which points to the existence of the specific intent and the other to the absence of the specific intent," the jury must adopt the latter interpretation.

Wolcott relies on *People* v. *Salas* (1976) 58 Cal.App.3d 460, 473-474 [129 Cal.Rptr. 871], which held that failure to instruct under CALJIC No. 2.02 in a great bodily injury case was reversible error. *Salas*, however, is inconsistent with our later decision in *People* v. *Miller* (1977) 18 Cal.3d 873 [135 Cal.Rptr. 654, 558 P.2d 552]. In rejecting the claim that the trial court erred by rejecting a proposed instruction based upon CALJIC No. 2.02, *Miller* stated that "the court expressly instructed on the proof necessary to support a finding that defendant intentionally inflicted great bodily injury. Thus, the jurors were instructed that they must find beyond a reasonable doubt that defendant entertained a *specific intent* to inflict such injury and that 'the intent with which an act is done is shown by the circumstances attending the act, the manner in which it is done, the means used, and the soundness of mind and discretion of the person committing the act.' (See CALJIC No. 3.34.) In view of the foregoing the jury was properly instructed in the prevailing circumstances and, on the record, defendant cannot complain of adverse findings on the issue of his intent to commit great bodily injury." (P. 884.)

The same instructions found sufficient in *Miller* were given in the present case. The facts of the case at hand, moreover, suggest that Wolcott would not benefit from an instruction on circumstantial evidence. This is not a case in which the evidence gives rise to two reasonable inferences, one pointing to an intent to inflict great bodily injury and one to lack of intent. The only reasonable inference from Wolcott's act of continuing to pull the trigger after King had released his hold on the gun is that Wolcott intended to shoot King.[8]

---

[8]In this respect the present case again presents an issue parallel to *People* v. *Miller, supra,* 18 Cal.3d 873. In *Miller,* we observed that "Defendant's argument is that the gun was first discharged while he grappled with Burk for its possession and that those circumstances precluded a finding that he intentionally sought to injure Burk. But defendant fired the second shot while Burk was falling backwards and defendant cannot reasonably argue that such shot was unintended." (P. 883.) The present case differs only in that, although Wolcott pulled the trigger during the struggle, no shot was fired until King lost his grip on the gun.

We, therefore, find no error in the trial, conviction, or sentencing of defendants. The judgments are affirmed.

Mosk, J., Richardson, J., Kaus, J., and Arnason, J.,* concurred.

Reynoso, J., concurred in the result.

**BIRD, C. J.**—I concur in the judgment of the court and in parts 1, 3 and 4 of its opinion. However, I disagree with the majority's holding, in part 2 of the opinion, that enhancement allegations may not be considered in determining which uncharged offenses, if any, are necessarily included in the charged offense. In my view, such allegations *should* be treated as part of the accusatory pleading. To hold otherwise would be to treat a significant factual allegation which appears on the face of the pleading as if it did not exist.

A necessarily included offense is one which is embraced within the legal definition of the greater, charged offense. (*People* v. *Marshall* (1957) 48 Cal.2d 394 [309 P.2d 456].) As the majority recognize, the "legal definition" of the charged offense includes not only the definition set out in the relevant statute, but also the offense specifically described in the complaint, indictment or information. Thus, in *Marshall* this court held that an offense is necessarily included in a charged offense if it is encompassed within the "specific language of the accusatory pleading." (*Ibid.*)

That holding was based "upon considerations of fairness . . . ." (*Ibid.*) The touchstone of fairness is whether the accused has adequate notice of the charges against him so that he will "'not be taken by surprise by evidence offered at his trial.'" (*People* v. *West* (1970) 3 Cal.3d 595, 612 [91 Cal.Rptr. 385, 477 P.2d 409], quoting *In re Hess* (1955) 45 Cal.2d 171, 175 [288 P.2d 5].) As this court emphasized in *People* v. *Lohbauer* (1981) 29 Cal.3d 364, 368-369 [173 Cal.Rptr. 453, 627 P.2d 183], "[a]s to a lesser included offense, the required notice is given when the *specific language* of the accusatory pleading *adequately warns the defendant that the People will seek to prove the elements of the lesser offense.*" (Italics added, citing *Marshall, supra,* 48 Cal.2d at p. 405; see also *West, supra,* 3 Cal.3d at p. 612.)

In *Marshall,* the information charged the accused with robbery and included language alleging that he "'did willfully, unlawfully, feloniously and forcibly take from the person and immediate presence of Jack J. Martens . . . Seventy Dollars . . . and an automobile. . . .'" (48 Cal.2d at p. 396.) At trial, Marshall was convicted of theft of an automobile as "'a lesser but

---

*Assigned by the Chairperson of the Judicial Council.

necessarily included offense.'" (*Ibid.*; former Veh. Code, § 503, see current Veh. Code, § 10851.) Since the information charged the accused with taking an automobile, the court noted that he had been "put on notice that he should be prepared to defend against a showing that he took that particular kind of personal property." (48 Cal.2d at p. 405.) And, "[b]ecause the information charged that the automobile was taken by robbery, [he] was put on notice that he should be prepared to defend against evidence showing the elements of that crime." (*Ibid.*) Thus, the court concluded that Marshall's conviction of the uncharged auto theft offense was proper, since the information specifically alleged that the property taken was "an automobile."

Under *Marshall* and its progeny, the proper inquiry is whether every element necessary to the uncharged offense has been alleged in related portions of the accusatory pleading. If every necessary element appears on the face of the pleading, the accused is "adequately warn[ed] . . . that the People will seek to prove the elements of the lesser offense." (See *People* v. *Lohbauer, supra,* 29 Cal.3d at pp. 368-369; see also *In re Robert G.* (1982) 31 Cal.3d 437, 440 [182 Cal.Rptr. 644, 644 P.2d 837].)

In this case, the prosecution alleged under Penal Code section 12022.5[1] that Johnston used a firearm in the commission of the offense. This accusatory pleading surely put him on notice that the prosecution would seek to prove that he used a gun. The only question to resolve is whether that factual allegation, combined with the robbery charge, also put him on notice that the state would seek to prove he had committed an assault with a deadly weapon.

In addition to *Marshall* and its progeny, there is direct statutory support for concluding that *all* allegations must be considered in determining necessarily included offenses where, as here, the accusatory pleading contains a gun-use allegation. Section 969d provides in relevant part: "Whenever [the] defendant used a firearm as recited in section 12022.5, the fact that the defendant used a firearm may be charged in the accusatory pleading. This charge, if made, *shall* be added to and *be a part of* the count or each of the counts of *the accusatory pleading* which charged the offense." (Italics added.) Thus, section 969d makes the use allegation a part of the substantive criminal charge pleaded.

The majority argue that necessarily included offenses cannot be premised on the elements of a firearm-use allegation because that allegation "becomes relevant only if the defendant is convicted of the substantive crime." (Maj. opn., *ante,* at p. 101.) However, the truth of the section 12022.5 allegation

---

[1] All statutory references hereafter are to the Penal Code.

is decided at the same proceeding as the substantive crime. Proof of firearm use does not await a jury determination on the underlying crime. Rather, the evidence is presented all at once. And, if the accused has evidence to refute the allegation, that evidence can only be presented before he rests his case—that is, at the same time as he presents evidence to refute the substantive charge.

Moreover, by charging firearm use, the prosecution has informed the accused that it will seek to prove the elements of that enhancement. Therefore, regardless of when the allegation comes into play, the accused is on notice that the prosecution will seek to prove firearm use at the guilt phase of the trial. If the prosecution is successful—i.e., if the accused is found guilty and the firearm-use allegation is found to be true—the accused could not successfully challenge the enhancement by arguing that he had no notice that the state would seek to prove he used a gun. Since notice is the touchstone of any necessarily included offense analysis, it is irrelevant that the jury does not actually decide the enhancement until it convicts the accused of the underlying offense.

The majority also attempt to buttress their holding with the fact that " 'section 12022.5 does not prescribe a new offense but merely additional punishment for an offense in which a firearm is used.' " (Maj. opn., *ante,* at p. 100.) However, this rationale flatly conflicts with our recent decision in *People* v. *Superior Court (Mendella)* (1983) 33 Cal.3d 754 [191 Cal.Rptr. 1, 661 P.2d 1081]. In *Mendella,* this court held that a section 995 motion to set aside an indictment or information may be used to challenge the sufficiency of the evidence to support an enhancement allegation as well as a substantive crime. (*Id.,* at p. 764.) Clearly, enhancement allegations are to be treated just like the other allegations of an accusatory pleading for section 995 purposes. The majority opinion offers no logical reason to reach a different result in the present context.

Once it is acknowledged that the use allegation must be considered part of the accusatory pleading, it is unnecessary to analyze, as the majority do, whether simple assault is a necessarily included offense of simple robbery. Under the correct view of the accusatory pleading test, the conclusion that simple assault is not necessarily included in simple robbery would not logically preclude the possibility that assault with a deadly weapon is a necessarily included offense of robbery with firearm use. All that is required by the analysis is to examine the accusatory pleading to see whether the elements of the robbery with a firearm use charge also necessarily encompass the crime of assault with a deadly weapon.

However, I do not disagree with the result reached by the majority since, even under my analysis, assault with a deadly weapon is not a necessarily

included offense of robbery with a use allegation. As the majority note, robbery with the use of a firearm can be committed without necessarily committing an assault with a deadly weapon. (Maj. opn., *ante,* at pp. 101-102.)

I join in the judgment of the court,[2] but I must vigorously dissent from the legal analysis set out in part 2. To hold, as the majority do, that enhancement allegations may not be considered in defining necessarily included offenses is contrary to statute and to the spirit, if not the holding, of *Marshall* and subsequent opinions of this court.

[2]I cannot, however, agree with footnote 2 of the majority opinion, which characterizes the inquiry required of the trial court in determining necessarily included offenses as excessively burdensome.

Superior court judges are currently required to make far more burdensome determinations in other contexts. For example, when asked by the prosecution to add charges or enhancements to an information, the judge must review all the evidence at the preliminary hearing to determine whether the facts show the accused has received due "notice by proof" that the state may seek to prove the additional charge or enhancement. (*People* v. *Manning* (1982) 133 Cal.App.3d 159, 165 [183 Cal.Rptr. 727]; *Talamantez* v. *Superior Court* (1981) 122 Cal.App.3d 629, 634 [176 Cal.Rptr. 800]; *People* v. *Hall* (1979) 95 Cal.App.3d 299, 314 [157 Cal.Rptr. 107]; *People* v. *Grigsby* (1969) 275 Cal.App.2d 767, 771-772 [80 Cal.Rptr. 294].)

Surely this "burden" of gleaning necessarily included offenses from the face of an accusatory pleading is substantially less onerous than examining an entire preliminary hearing transcript.