[No. E014366. Fourth Dist., Div. Two. Mar. 13, 1996.]

THE PEOPLE, Plaintiff and Respondent, v.
TARA LOUISE MILES, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rules 976 and 976.1, this opinion is certified for publication with the exception of parts II.B and II.C.

**COUNSEL**

Joan T. Anyon, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General,

Robert B. Shaw and Karl T. Terp, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

RICHLI, J.—Appellant was convicted by a jury of possession for sale of a controlled substance in violation of Health and Safety Code section 11378 (count 1); attempting to induce a false statement to a law enforcement official by force, threat of force or fraud in violation of Penal Code section 137, subdivision (b) (count 7);[1] and conspiracy to violate section 137, in violation of section 182 (count 8). Eight additional charges were dismissed either during or after trial. Appellant was sentenced to six years in prison and ordered to pay a restitution fine of $2,000, plus collection costs of $200.

Appellant challenges her convictions on counts 7 and 8, and the restitution fine and costs. She argues (1) the court improperly failed to instruct the jury regarding the lesser included offense of inducing a false statement to a law enforcement official; (2) the evidence was insufficient as to counts 7 and 8, and the jury was not instructed to make a required finding with respect to count 7 whether the acts for which appellant was convicted were the natural and probable consequences of the common design of appellant and the alleged perpetrator; and (3) the restitution fine was an abuse of discretion because the court did not find, and the record does not establish, that appellant had the ability to pay. In the published portion of this opinion we reject appellant's first contention, and in the unpublished portion we reject her remaining ones.

### I

### FACTUAL AND PROCEDURAL BACKGROUND

On April 30, 1992, authorities conducted a probation search of a house on Oasis in Joshua Tree, which they believed to be appellant's residence. Appellant was at the house giving her four-year-old daughter a bath. The search yielded firearms, various items used in preparing drugs for sale, a radio scanner tuned to a police frequency, and several quantities of methamphetamine. During the search, Alex Kubiak arrived at the house. He was searched and a syringe was found in his pocket. Appellant and Kubiak were arrested.

After appellant was released on bail, she offered Kubiak money, a motorcycle and a car if he would tell the authorities he was renting the house from

---

[1]Further section references are to the Penal Code.

her at the time of the search. Kubiak gave appellant's attorney a statement saying he lived at the house and owned its contents on April 30, and made the same statement to a deputy district attorney.

A few days after appellant was released, appellant and her boyfriend, Daniel Pippett, met with Karol Winger, appellant's sister's roommate, at Pippett's house. Appellant asked Winger to tell the authorities appellant was living with Pippett prior to her arrest, and that anything in the Oasis house would belong to Kubiak. In Winger's estimation, these were false statements. After the meeting, appellant and Pippett met with Winger several more times at Pippett's house.

At some later point, Winger had a telephone conversation with Gordon Isen, a deputy district attorney. The call was placed from Pippett's house, and appellant and Pippett were present when it was made. Pippett tape-recorded the call. Before the call, Winger had a discussion with appellant and Pippett concerning what Winger would say. Winger lied to Isen, telling him appellant had been spending all her time at Pippett's house since at least April 1. Either before or after the conversation with Isen, Winger told appellant's attorney, James Goldstein, the same story she told Isen.

After speaking with Winger, the deputy district attorney moved to dismiss the charges against appellant. The charges against appellant were dropped and charges were filed against Kubiak. Kubiak later told the authorities he had lied in his statement, and that appellant had offered him the money and vehicles to do so. Eventually, charges were refiled against appellant.

As time passed and it appeared she might have to testify, Winger became increasingly troubled and eventually told Pippett she would not testify. Pippett made about half a dozen visits to Winger's house thereafter. During these visits, Pippett told Winger that if she did not testify in favor of appellant, appellant and Pippett would charge Winger with molesting appellant's daughter. Pippett also asked Winger if there was anything that could be done or given to her that would change her mind, and suggested "money or something."

Pippett last visited Winger on February 2, 1993. On February 5, a tear gas bomb was thrown through Winger's bedroom window. Tire prints found near the window were consistent with tires on a truck parked at Pippett's house, where appellant was now living.

Also on February 5, a pipe bomb explosion was reported at Pippett's house. Pippett told the authorities he had found the bomb in his truck and

thrown it away before it exploded. A sheriff's department investigator concluded the explosion had not occurred as Pippett said. Pippett's house and garage were searched, and materials and manuals for making bombs were found.

In her defense, appellant testified she had moved out of the Oasis house before April 30 and subleased it to Kubiak. She had returned to the house on April 30 to pick up a few things, and her daughter had needed to use the restroom after playing in the mud. She denied possession of or familiarity with the firearms, drugs or other items found in the house. Appellant also denied asking Kubiak and Winger to lie for her. She testified that on February 5, the day of the bombing, she was living with her grandmother.

## II

### DISCUSSION

#### A. *Lesser Included Offense*

Count 7 of the amended information charged appellant with a violation of section 137, subdivision (b). Count 8 charged appellant with conspiracy to commit a felony violation of section 137. Section 137, subdivision (b) provides in relevant part: "Every person who attempts by force or threat of force or by the use of fraud to induce any person to give false testimony or withhold true testimony or to give false material information pertaining to a crime to, or withhold true material information pertaining to a crime from, a law enforcement official is guilty of a felony, punishable by imprisonment in the state prison for two, three, or four years."

Section 137, subdivision (c) provides: "Every person who knowingly induces another person to give false testimony or withhold true testimony not privileged by law or to give false material information pertaining to a crime to, or to withhold true material information pertaining to a crime from, a law enforcement official is guilty of a misdemeanor."

The trial court has a sua sponte duty to instruct the jury on necessarily included offenses when the evidence raises a question about whether all the elements of the greater offense are present. (*People* v. *Wickersham* (1982) 32 Cal.3d 307, 323-324 [185 Cal.Rptr. 436, 650 P.2d 311].) Appellant argues that the misdemeanor offense of knowingly inducing a false statement as set forth in section 137, subdivision (c) is a lesser included offense of the felony of inducing a false statement by force, threat of force or fraud as set forth in subdivision (b). Consequently, she

argues, the court was required to instruct the jury regarding the lesser offense.

"An offense is necessarily included in another if (1) the greater statutory offense cannot be committed without committing the lesser because all of the elements of the lesser offense are included in the elements of the greater; or (2) if the charging allegations of the accusatory pleading include language describing it in such a way that if committed in that manner the lesser offense must necessarily be committed." (*People* v. *Clark* (1990) 50 Cal.3d 583, 636 [268 Cal.Rptr. 399, 789 P.2d 127].) Under either test, inducing a false statement in violation of section 137, subdivision (c) is not an offense necessarily included within attempting by force, threat of force or fraud to induce a false statement in violation of section 137, subdivision (b).

First, the offense defined in section 137, subdivision (b) does not contain all the elements of the offense defined in subdivision (c). Subdivision (b) applies to "[e]very person who *attempts* by force or threat of force or by the use of fraud" to induce a false statement. (Italics added.) Subdivision (c) applies to "[e]very person who knowingly *induces*" a false statement. (Italics added.) Thus, subdivision (c) requires as one of its elements that the defendant actually induce a false statement. Subdivision (b), in contrast, requires only that the defendant attempt to induce a false statement through force, threat of force or fraud.

Where the lesser offense includes an element not required for the commission of the greater offense, the lesser offense is not an included offense for purposes of determining whether a sua sponte instruction is required. In *People* v. *Wolcott* (1983) 34 Cal.3d 92 [192 Cal.Rptr. 748, 665 P.2d 520], for example, the court held that assault with a deadly weapon is not included within a charge of robbery with a firearm use enhancement. The court observed that assault requires an attempt to inflict violent injury and the present ability to do so. Robbery, even where a firearm is used, requires neither element. (34 Cal.3d at p. 99.)

Similarly, the offense set forth in section 137, subdivision (b) can be committed without necessarily committing the offense set forth in subdivision (c). An unsuccessful attempt to induce a false statement using force, threat of force or fraud would constitute a violation of subdivision (b) but not of subdivision (c), since no false statement would have been induced in fact. Section 137 as a whole reflects a legislative judgment that an attempt to induce a false statement through force, threat of force or fraud, even if unsuccessful, is inherently more serious than the successful inducement of a false statement by means other than force, threat of force or fraud.

The second test for determining whether one offense is included within another requires that we consider the greater offense as alleged in the accusatory pleading, to determine whether it is described "in such a way that if committed in that manner the lesser offense must necessarily be committed." (*People* v. *Clark, supra,* 50 Cal.3d 583, 636.) Count 7 of the second amended information, which charged appellant with a violation of section 137, subdivision (b), merely tracked the language of the statute in alleging that appellant "did willfully and unlawfully attempt by force and threat of force and by the use of fraud" to induce Winger to testify falsely. "When the accusatory pleading describes a crime in the statutory language, . . . the test for a lesser included offense is simply that, where the charged 'offense cannot be committed without necessarily committing another offense, the latter is a necessarily included offense.' " (*People* v. *Wolcott, supra,* 34 Cal.3d 92, 99, citing *People* v. *Greer* (1947) 30 Cal.2d 589, 596 [184 P.2d 512] and *People* v. *Anderson* (1975) 15 Cal.3d 806, 809 [126 Cal.Rptr. 235, 543 P.2d 603].) As explained above, the offense described in section 137, subdivision (b) and alleged in count 7 requires only an attempt and not a successful inducement. Consequently, it can be committed without necessarily committing the misdemeanor offense defined in subdivision (c).

Count 8 of the second amended information charged appellant with conspiracy to violate section 137. It alleged that the conspirators committed eight overt acts in furtherance of the conspiracy. The overt acts were: (1) appellant asked Winger to lie to Isen concerning the date appellant moved from the Oasis house; (2) appellant induced Winger to meet with Goldstein and Winger lied to him about the date appellant moved; (3) appellant and her coconspirators tape-recorded a conversation between Winger and Isen in which Winger lied to Isen concerning the date appellant moved; (4) appellant and Pippett threatened to charge Winger with child molestation when Winger refused to testify falsely at appellant's trial; (5) Pippett offered money or property to Winger if she would agree not to reveal she had lied to Isen; (6) appellant and her coconspirators caused a gas canister to be thrown into Winger's bedroom; (7) the coconspirators falsely reported a bomb incident at Pippett's residence to avoid suspicion of the bombing at Winger's house; and (8) an unidentified coconspirator told Kubiak that if he testified against appellant he and his son would be killed.

It is apparent that the conspiracy as charged does not necessarily include the offense of inducing a false statement in violation of section 137, subdivision (c). The jury was instructed that it could convict appellant of conspiracy if it found any one of the overt acts was committed. Appellant does not dispute that the instruction accurately stated the law. Thus, the jury could have based a conspiracy conviction solely on, for example, the bombing of

Winger's residence. Because the bombing did not persuade Winger to testify falsely, a finding of conspiracy based on that act would not have required a finding that the offense of *inducing* a false statement, as defined in section 137, subdivision (c), was necessarily committed.

Even if the jury were required to find all eight overt acts were committed, there would be no *necessary* violation of section 137, subdivision (c). None of the charged acts alleged the actual inducement of a false statement. Acts (4), (5), (6) and (8) alleged efforts to induce Winger to testify falsely, and to dissuade Kubiak from testifying against appellant, through bribery, force, threats and fraud. Since these efforts were unsuccessful, no completed offense under section 137, subdivision (c) was alleged. Similarly, act (1) alleged the attempted inducement of a false statement, but not the actual inducement.

Act (2) alleged the actual inducement of a false statement, but the statement was made to Goldstein, appellant's attorney. Section 137, subdivision (c) prohibits inducing the giving of false information to a "law enforcement official." Subdivision (e) defines "law enforcement official" to include "any district attorney, deputy district attorney, city attorney, deputy city attorney, the Attorney General or any deputy attorney general, or any peace officer included in Chapter 4.5 (commencing with Section 830) of Title 3 of Part 2." Since Goldstein was not a "law enforcement official" as defined in subdivision (e), the false statement to him was not a violation of section 137, subdivision (c).

Act (3) alleged the recording of a telephone conversation and act (7) alleged a false report of a bomb incident. While these acts were alleged to have been done in furtherance of the conspiracy, neither act involved the alleged inducement or attempted inducement of a false statement.

We thus conclude that, under the applicable criteria, the offense set forth in section 137, subdivision (c) was not necessarily included within the offenses charged in either count 7 or count 8. Consequently, the court was not required to instruct sua sponte regarding the lesser offense.

B., C.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . .

*See footnote, *ante,* page 575.

## III

### Disposition

The judgment is affirmed.

Hollenhorst, Acting P. J., and McKinster, J., concurred.