48 Cal.Rptr.3d 904 (2006)
143 Cal.App.4th 369
The PEOPLE, Plaintiff and Respondent,
v.
Ronald JENKINS, Defendant and Appellant.
No. C049573.
Court of Appeal of California, Third District.
September 25, 2006.
*905 E. Stephen Temko, under appointment by the Court of Appeal, San Diego, for Defendant and Appellant.
Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Mary Jo Graves, Senior Assistant Attorney General, Julie A. Hokans, Supervising Deputy Attorney General, Catherine Chatman, Deputy Attorney General, for Plaintiff and Respondent.
CERTIFIED FOR PARTIAL PUBLICATION.[*]
BLEASE, Acting P.J.
Defendant appeals from the judgment of conviction after a jury found him guilty as charged of two counts of battery with serious bodily injury (Pen.Code, § 243, subd. (d); counts 1 and 3)[1] and two counts of assault with a deadly weapon upon the victims Seeva and Steven Cherms. (§ 245, subd. (a)(1); counts 2 and 4.) The jury found true the great bodily injury enhancements alleged in connection with the aggravated assault charges (§ 12022.7, subd. (a)) and the criminal street gang enhancement alleged as to all four counts. (§ 186.22, subd. (b)(1).) The court sentenced defendant to a total unstayed prison term of 22 years and four months. It made count four, the aggravated assault on Steven Cherms, the principal term, imposed a consecutive term on count two for the aggravated assault on Seeva Cherms, and imposed concurrent terms on counts one and three for felony battery. The court stayed the sentence on count three but did not stay the sentence on count one.
On appeal, defendant contends the judgment must be reversed because the trial court committed prejudicial error by denying his motion to bifurcate trial of the criminal street gang allegation enhancement and there was prosecutorial misconduct and cumulative error.
Defendant also claims the constitutional doctrine of double jeopardy requires that the battery convictions be vacated and the abstract of judgment be amended to reflect that a stay of the sentence was imposed on count one pursuant to Penal Code section 654.
With respect to double jeopardy, respondent contends this claim has no merit because the double jeopardy clause does not apply to a unitary criminal case and the use of a sentence enhancement to determine whether one offense is included in another is an unauthorized expansion of section 954. We agree.
In the published portion of the opinion we will conclude that the multiple punishment proscription of the double jeopardy clause does not prohibit multiple convictions for the offenses of aggravated assault resulting in great bodily injury and battery with serious bodily injury.
However, we agree with defendant that the sentence on count one should be stayed pursuant to section 654 and shall direct that the trial court amend the judgment to reflect a stay of the sentence imposed on count one. In all other respects, we shall affirm the judgment.

*906 FACTUAL BACKGROUND

A. The Assaults
In August 2004, Seeva and Steven Cherms[2] were looking for their 15-year-old daughter, Hailey, who had run away from home. On August 13th, Steven received a telephone call advising him that his daughter may be at a certain apartment complex off of Edison and Howe Avenue in Sacramento County. The complex was in the same area the Cherms had lived in 25 years earlier.
Joshua, a friend of theirs, drove the couple to the apartment complex in his sport utility vehicle (SUV). He parked across the street from an apartment complex on Edison Avenue and he and Steven walked up to the iron gate. Just as the manager opened the gate for them, Steven thought he saw his daughter walking down the street and shouted to Seeva, "hey, that looks like Hailey right there."
Seeva exited the SUV and followed Steven, but then looked back and saw two people in the SUV, a young adult later identified as defendant and a 12 to 14-year old juvenile. Seeva could see defendant trying to start the vehicle and shouted for Steven because many of their valuable personal belongings, contained in several bags, were in the SUV.[3] Defendant and the juvenile took the bags and ran between the apartments.
As Seeva walked towards Howe Avenue looking for defendant and the juvenile, she asked a man and woman who were standing near the corner if they had seen where the two males had gone with her bags. The couple was cordial but told Seeva her belongings were gone and advised her to "write it off." Seeva called 911 from her cellular phone to report the theft. After she made the call, the woman told her the "kid" had gone in the direction of Howe and Edison and pointed out an apartment complex where the stolen property would be unloaded.
Meanwhile, Joshua picked Seeva up in the SUV and drove down Howe Avenue looking for defendant and the juvenile. Unable to find them, he drove back to the apartment complex and parked the SUV in front of the Royal Gardens Apartments on Howe Avenue. Seeva exited the vehicle and saw Steven walking towards her. Meanwhile, a group of about 10 individuals had gathered nearby, all wearing white T-shirts and jeans. As the group started to approach the Cherms, Seeva recognized defendant as the person who tried to take the SUV. When he stepped toward her in a threatening manner, she realized she was in danger, took a step back, and told him she had no problem with him, she was just trying to retrieve her belongings.[4]
At that time, Steven approached and Seeva told him they should wait for the police, however defendant pushed her to get to Steven who was bewildered and backing away. At the same time, defendant also began giving orders to the other males in the group, directing some to take the SUV and telling others to make sure Steven did not go anywhere. When Steven was surrounded, a male known as J-Mack hit him in the head, followed by *907 defendant, who hit him using what appeared to be homemade brass knuckles. Defendant struck Steven in the temple and eye and than hit him in the right cheek, causing Steven to stumble and fall to the ground.
Seeva began yelling, "Stop, he's disabled . . . [h]e doesn't want to fight you. He wants nothing to do with this. Stop. Please stop." Hoping to scare them, she also told the group "the police are on their way." Undeterred, defendant walked towards her, smiled, showing gold teeth, and then hit her in the face with his fist. The blow knocked her off her feet, causing her to fall to the ground and lose consciousness. Defendant ran away, but 15-year old Terrance C. (hereafter Terrance) began kicking her in the head and stomping on her stomach and the left side of her body. In an effort to protect his wife, Steven ran over to Seeva and lay on her, suffering a few additional kicks before the police arrived.
When Seeva regained consciousness, she felt searing pain in her head and her sides. She had difficulty breathing and was intubated and taken by ambulance to the hospital where she spent a week. She had a dislocated jaw, a closed head injury associated with amnesia and loss of consciousness, a fractured rib, and bruising around her ribs and back. Dr. Owens, director of the Mercy San Juan Trauma Center, characterized her injuries as "moderately severe" and consistent with a "rather significant" beating.
As a result of the beating, Steven sustained a "giant retinal tear" and "traumatic vitreous hemorrhage" in his right eye. He underwent surgery on August 27, 2004, to re-attach his retina and will require two or three additional surgeries. At the time of trial, he had no actual sight in his right eye and his visual prognosis was guarded due to the severe trauma to his eye. The blows to his face also broke two of his teeth and knocked the shell of a recent root canal and temporary filling out of his mouth.

B. The Investigation
Terrance advised law enforcement officers that after the Cherms confronted defendant and another friend about taking their property, defendant punched the man in the face a couple of times and when the woman yelled at defendant, he turned and punched her in the face, causing her to fall. Terrance refused to give the deputy any further information about his two friends because he was scared they would kill him if he did.
On September 1, 2004, Ken Silva, defendant's probation officer, went with his partner and a detective to defendant's address. When they arrived, Silva saw defendant standing outside. When they made eye contact with him, he ran away. Later that day, Silva was asked to identify a patient at Kaiser Permanente Medical Center who was giving a false name and was believed to be defendant. Silva identified defendant who was sitting in the emergency room with a heavily bandaged arm. He was awaiting surgery. Defendant told Silva he cut his arm on a fence he jumped over while running from Silva earlier that day.
The following day, on September 2, 2004, defendant agreed to speak with Detective Rivera. He told Rivera the Cherms approached him and accused him of taking their property. Steven became verbal with him, punched him in the face, and a fistfight ensued. Defendant denied hitting Seeva but said Terrance was present.

C. The Gang Enhancement
Defendant and Terrance are both members of the street gang known as the Del *908 Paso Heights Bloods (DPH Bloods). Terrance carved the letters "DPH" in his arm because it was a "gang thing" and showed he was from Del Paso Heights.
Detective Elaine Stoops of the Sacramento County Sheriff's Department gang unit testified as an expert on gang psychology and gang-related crime. The DPH Bloods are a gang with over 200 validated members in the northern area of Sacramento County. The letters DPH are a symbol commonly used to signify that gang and are used by gang members as a verbal challenge. The gang has been present in the Del Paso Heights area since the late 1980's and gang members have been seen in the area of the Royal Gardens Apartments, which is within a couple of miles of Del Paso Heights.
To be a validated member, an individual must meet two of 10 standard criteria and have been an active gang member within the last five years. Members of the DPH Bloods frequently engage in the sale of narcotics, robberies, drive-by shootings, and homicides.
According to Detective Stoops, defendant has been a validated member of the DPH Bloods since February 2003. The validation was based upon a field contact by Deputy Jaymon Martinez, at which time defendant admitted he was a member of that gang while he was in the company of two other validated gang members and was wearing red clothing, the color associated with the DPH Bloods. Additionally, he had committed a gang-related crime, which may be a crime involving narcotic sales, arson, robbery, drive-by shootings, or homicide.
According to Stoops, a gang member's whole livelihood is about respect and disrespect. Gang members want and expect others to "respect" them, meaning to fear them. Gang members do not like to be labeled as snitches and a snitch can expect severe retribution from other members in the form of a "beat down" or shooting. A "beat down" occurs when the gang surrounds a person and beats the person up until he or she goes down and is no longer moving or causing the gang a problem. Some of these beat downs result in homicide.
Committing a theft and participating in a beat down as in the present case benefits a gang member by bolstering his status in his gang and other gang sets and reinforces the fear and intimidation of the community. Other members of the community are reluctant to speak to law enforcement authorities because they fear reprisal from gang members.
Males as young as seven are brought into the gang because they are naïve and impressionable and are willing to do what they are told without asking a lot of questions. Older gang members test young males by ordering them to do various acts in the commission of a criminal offense to prove their trustworthiness and loyalty to the gang.
Stoops also testified that Charles Yerger and William Fields are validated members of the DPH Bloods, that in October 2002, Yerger made a threat to commit a crime resulting in great bodily injury or death (§ 422) for which he was charged and convicted with a gang enhancement (§ 186.22), and that Fields suffered two prior convictions for assault with a firearm sometime in December 2002 or 2003.

D. Defense
Defendant took the stand, denied he was a gang member, and testified he was acting in self-defense when he hit Steven Cherms. According to defendant, the day of the attack, he went to the Royal Gardens Apartments with his girlfriend to visit friends. While they were sitting in front *909 of the apartment complex, he heard a lot of yelling, which drew his attention to a white couple. The man was upset and was yelling at some kids saying "You little bastards, where's my stuff at?" while the woman was pointing at people. The woman approached him, pointed at him and said "He's one of the ones that took my property." When the man started yelling at him, defendant stood up and said he did not know what they were talking about. The man hit him in the face and a fight ensued. Defendant stopped fighting when his girlfriend pulled him away and he went back into the apartment complex. He left the area a short time later when his ride arrived. At that time, the man and the woman were both standing on their feet yelling at the kids. He never hit the woman and never saw anyone else hurt her.

DISCUSSION

I.-II.[**]

III.

Double Jeopardy
Defendant contends the double jeopardy clause of the state and federal constitutions require that his convictions for battery with serious bodily injury be vacated because that offense is a lesser included offense of assault with a deadly weapon coupled with a great bodily injury enhancement.[5] Respondent contends this claim has no merit because the double jeopardy clause does not apply to a unitary criminal case and the use of a sentence enhancement to determine whether one offense is included in another is an unauthorized expansion of section 954. We agree with respondent.
The multiple punishment proscription of the double jeopardy clause does not prohibit multiple conviction for the offense of aggravated assault resulting in great bodily injury and battery with serious bodily injury.
Defendant was charged with and convicted of battery with serious bodily injury (§ 243, subd. (d); counts 1 and 3) and assault with a deadly weapon (§ 245, subd. (a)(1); counts 2 and 4) with a sentence enhancement he personally inflicted great bodily injury. (§ 12022.7, subd. (a); counts 2 and 4.) The trial court sentenced him to an aggregate prison term of 22 years four months. It made count four, the aggravated assault on Steven Cherms, the principal term, imposed a consecutive term on count two for the aggravated assault on Seeva, and imposed concurrent terms on counts one and three for felony battery. The court stayed the sentence on count three but did not stay the sentence on count one.[6]

A. Federal Law
The Double Jeopardy Clause of the Fifth Amendment, made applicable to the *910 states, provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb...." The clause "`protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense.' [Citation.]" (Brown v. Ohio (1977) 432 U.S. 161, 165, 97 S.Ct. 2221, 2225, 53 L.Ed.2d 187, 194; quoting North Carolina v. Pearce (1969) 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656, 664-665, overruled on other grounds in Alabama v. Smith (1989) 490 U.S. 794, 802, 109 S.Ct. 2201, 2206, 104 L.Ed.2d 865, 874.)
The applicable rule for determining whether two offenses are the same for purposes of double jeopardy was stated in Blockburger v. United States (1932) 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306, 309 (Blockburger). If "the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." (Ibid.) Typically, the greater offense is said to be the "same offense" as the lesser included offense. (Rutledge v. United States (1996) 517 U.S. 292, 297, 116 S.Ct. 1241, 1245, 134 L.Ed.2d 419, 426; Whalen v. United States (1980) 445 U.S. 684, 691-695, 100 S.Ct. 1432, 1437-1439, 63 L.Ed.2d 715, 723-726.)
Assault with force likely to produce great bodily injury is not a lesser included offense of battery with serious bodily injury. (In re Jose H. (2000) 77 Cal.App.4th 1090, 1095-1096, 92 Cal.Rptr.2d 228.) Defendant contends, however, that one who assaults another with a deadly weapon and in so doing, personally inflicts great bodily injury, necessarily commits a battery with serious bodily injury. Relying on the third aspect of double jeopardy,[7] defendant argues that in determining whether double jeopardy prohibits multiple punishment for the two offenses, we must consider the great bodily injury enhancement to determine whether the battery conviction is a lesser included offense of aggravated assault. We decline to do so.
The United States Supreme Court has held that the Double Jeopardy Clause limits multiple punishment for the same offense when such punishment occurs in a successive proceeding. (Hudson v. United States (1997) 522 U.S. 93, 99, 118 S.Ct. 488, 493, 139 L.Ed.2d 450, 459.) As to cumulative sentences imposed in a single trial, the clause does no "more than prevent the sentencing court from prescribing greater punishment than the legislature intended." (Missouri v. Hunter (1983) 459 U.S. 359, 366, 103 S.Ct. 673, 678, 74 L.Ed.2d 535, 542.) In making that determination, the court assumes the legislative body "ordinarily does not intend to punish the same offense under two different statutes." (Whalen v. United States, supra, 445 U.S. at pp. 691-692, 100 S.Ct. at pp. 1437-1438, 63 L.Ed.2d at p. 724.) Cumulative sentences may be imposed under two statutes, even where they proscribe the same offense under Blockburger, if the Legislature clearly authorizes cumulative punishment. (Ibid; Missouri v. Hunter, supra, 459 U.S. at p. 366, 103 S.Ct. at p. 678, 74 L.Ed.2d at p. 542.)
Turning to the statutory scheme, we conclude the Legislature has proscribed cumulative punishment. We first note that section 954 clearly and directly authorizes *911 the conviction of a defendant for "any number of the offenses charged. . . ." (People v. Pearson (1986) 42 Cal.3d 351, 357-358, 228 Cal.Rptr. 509, 721 P.2d 595.) While this language seems absolute, the rule prohibiting multiple convictions based on necessarily included offenses stands as a limited exception to the statutory rule. (People v. Ortega (1998) 19 Cal.4th 686, 692, 80 Cal.Rptr.2d 489, 968 P.2d 48; People v. Pearson, supra.) The courts have shown no inclination to expand that exception. For example, in Pearson, the court declined to expand the rule to include a "specifically included" offense reasoning that "strict application of the rule conflicts with the plain language of section 954 ... which does not contemplate exceptions for `specifically included' offenses." (42 Cal.3d at p. 357-358, 228 Cal.Rptr. 509, 721 P.2d 595; see also People v. Wolcott (1983) 34 Cal.3d 92, 101, 192 Cal.Rptr. 748, 665 P.2d 520 [for purposes of sua sponte instructions]; In re Jose H., supra, 77 Cal. App.4th at p. 1095, 92 Cal.Rptr.2d 228 [for purposes of multiple conviction].)
By contrast, section 654 prohibits multiple punishment for convictions based upon a single act. (People v. Pearson, supra, 42 Cal.3d at p. 359, 228 Cal.Rptr. 509, 721 P.2d 595; People v. Ortega, supra, 19 Cal.4th at p. 692, 80 Cal.Rptr.2d 489, 968 P.2d 48.) It provides in pertinent part that "[a]n act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." (§ 654, subd. (a).) Recognizing the tension between sections 954 and 654, the court in People v. Pearson, supra, 42 Cal.3d 351, 228 Cal.Rptr. 509, 721 P.2d 595, noted that it had "long struggled with the problem of permitting multiple convictions while protecting the defendant from multiple punishment." (Id. at p. 359, 228 Cal.Rptr. 509, 721 P.2d 595.) The court harmonized these two statutes by adopting a solution in which multiple convictions are permitted on counts arising from a single act or course of conduct, while multiple punishment is avoided by staying execution of sentence on all but one of the convictions. (42 Cal.3d at p. 360, 228 Cal.Rptr. 509, 721 P.2d 595; People v. Ortega, supra, 19 Cal.4th at p. 692, 80 Cal.Rptr.2d 489, 968 P.2d 48.)
Thus, the protection afforded by section 654 is considerably broader than that provided by Blockburger. Application of section 654 turns on the factual circumstances of the offense rather than on the statutory comparison required to determine whether one offense is necessarily included in the other. Under section 654, an act punishable by different provisions, whether or not the act is subject to an enhanced penalty, may not be punished under more than one provision defining an offense. Therefore, because the applicable test under section 654 does not hinge on whether or not an offense is a lesser included offense, the problem raised by defendant evaporates. As we shall discuss in Part IV, defendant may not be punished for both the aggravated assault with the enhancement (§§ 245, subd. (a)(1), 12202.7, subd. (a)) and felony battery. (§ 243, subd. (d).)
Defendant argues however that multiple convictions subject him to harsher punishment under the Three Strikes law in any future prosecution. He reasons that the purpose of that law is to mete out more severe punishment for recidivists, a purpose not served by punishing a defendant who commits a single criminal act that violates more than one statute. We disagree.
The court in Pearson, supra, 42 Cal.3d 351, 228 Cal.Rptr. 509, 721 P.2d 595, considered *912 a similar claim where the defendant was convicted of both sodomy and lewd and lascivious acts on a child for each of two acts. The defendant argued that use of more than one conviction based on a single act for the purpose of enhancing a subsequent sentence constituted multiple punishment. (Id. at p. 358, 228 Cal.Rptr. 509, 721 P.2d 595.) The court recognized the potential problem, noting that the "`appropriate procedure . . . is to eliminate the effect of the judgment as to the lesser offense insofar as the penalty alone is concerned.'" (Id. at pp. 359-360, 228 Cal.Rptr. 509, 721 P.2d 595.) This is accomplished by staying execution of sentence on all but one conviction arising out of each act, the stays to become permanent on completion of the sentence on the more serious offense. (Id. at p. 360, 228 Cal. Rptr. 509, 721 P.2d 595.)
Additionally, the Pearson court held that a defendant cannot be subjected to future enhancements based on multiple convictions for the same offense. (42 Cal.3d at pp. 361-363, 228 Cal.Rptr. 509, 721 P.2d 595.) In so doing, the court stated that "[a]ny subsequent sentences imposed on defendant can be enhanced on the basis of the convictions for which he served a sentence; but convictions for which service of sentence was stayed may not be so used unless the Legislature explicitly declares that subsequent penal or administrative action may be based on such stayed convictions. Without such a declaration, it is clear that section 654 prohibits defendant from being disadvantaged in any way as a result of the stayed convictions." (People v. Pearson, supra, 42 Cal.3d at p. 361, 228 Cal.Rptr. 509, 721 P.2d 595.)
More recently, the court has taken a similar position with respect to convictions charged as strikes under the Three Strikes law. In People v. Benson (1998) 18 Cal.4th 24, 74 Cal.Rptr.2d 294, 954 P.2d 557, the defendant was charged with two prior convictions, which arose out of the same set of facts where the trial court imposed sentence on one count while staying sentence in the other. The question was whether defendant had one or two strikes. The Supreme Court held that "the plain language, legislative history, and legislative purpose of the Three Strikes law compel the conclusion that when a court has stayed sentence on an otherwise qualifying conviction under section 654, the stayed conviction may be treated as a strike." (Id. at p. 26, 74 Cal.Rptr.2d 294, 954 P.2d 557.) However, the court cautioned that "there are some circumstances in which two prior felony convictions are so closely connected ... that a trial court would abuse its discretion under section 1385 if it failed to strike one of the priors." (Id. at p. 36, fn. 8, 74 Cal.Rptr.2d 294, 954 P.2d 557; in accord People v. Sanchez (2001) 24 Cal.4th 983, 993, 103 Cal.Rptr.2d 698, 16 P.3d 118.)
In conclusion, we find that the Legislature has prohibited cumulative punishment for multiple offenses arising out of the same act. However, because that prohibition provides greater protection than would Blockburger by encompassing an offense that is subject to an enhancement, we reject defendant's claim the multiple punishment prohibition of the federal double jeopardy clause requires reversal of his conviction for felony battery.

B. California Law
The California Constitution provides similar double jeopardy protections. (Cal. Const., art. I, § 15 ["Persons may not twice be put in jeopardy for the same offense...."].) Like the federal clause, the California clause protects against both multiple prosecution and multiple punishment for the same offense. (People v. *913 $1,930 United States Currency (1995) 38 Cal.App.4th 834, 845-846, 45 Cal.Rptr.2d 322.) Because California's provision is similar to the federal provision and shares the same purposes, the courts have generally construed it consistent with its federal counterpart. (People v. Monge (1997) 16 Cal.4th 826, 844, 66 Cal.Rptr.2d 853, 941 P.2d 1121.) When construing the California clause, the California Supreme Court has said, "`"cogent reasons must exist"' before we will construe the Constitutions differently and `"depart from the construction placed by the Supreme Court of the United States."' [Citations.]" (Ibid.)
We find no cogent reasons to construe the clause differently. As stated above, under the federal provision, the question of multiple punishment is a question of legislative intent. Because we have concluded the Legislature has provided broader protection than does Blockburger, we see no reason to depart from our conclusion that the prohibition against multiple punishment does not include a prohibition against multiple convictions for the same offense.
Our conclusion is also consistent with In re Jose H., supra, 77 Cal.App.4th 1090, 92 Cal.Rptr.2d 228, where the court rejected the defendant's claim he cannot be convicted of both aggravated assault enhanced by a great bodily injury allegation and battery with serious bodily injury. The court looked first to People v. Wolcott, supra, 34 Cal.3d 92, 192 Cal.Rptr. 748, 665 P.2d 520, where the Supreme Court held that enhancements should not be considered in determining lesser included offenses for purposes of the trial court's sua sponte duty to instruct on lesser included offenses. (In re Jose H., supra, 77 Cal. App.4th at p. 1094, 92 Cal.Rptr.2d 228.) Next, the court looked to section 954, which permits multiple convictions and the exception for lesser included offenses recognized in Pearson, supra, 42 Cal.3d 351, 228 Cal.Rptr. 509, 721 P.2d 595. (In re Jose H., supra, 77 Cal.App.4th at pp. 1094-1095, 92 Cal.Rptr.2d 228.) In reconciling the clear statutory language authorizing multiple convictions for the same offense with the rule stated in Pearson, the court in In re Jose H. noted that "we are not, in this case, asked to consider the burden on the court of determining sua sponte jury instructions, due process issues of notice to a defendant of what charges he or she may have to defend against at trial, double punishment upon conviction or double jeopardy following a mistrial of one count. These considerations are present in cases using the phrases lesser included and necessarily included in their analyses." (Id. at p. 1095, 92 Cal.Rptr.2d 228.) Although the court found "the impact of declining to consider count II a necessarily included offense of count I is considerable," it nevertheless concluded that "[b]ecause the rule recognized in Pearson carves out an exception to a statute that appears to specifically authorize multiple convictions based on the same conduct, we decline to accept appellant's invitation to expand the definition of necessarily included offenses beyond its existing boundaries. Those boundaries limit our consideration of whether count I and count II are necessarily included offenses of one another to the elements of the offenses charged, not the stated offenses with their attached enhancements." (Ibid.)
We agree with the court's conclusion in In re Jose H. However, we find the potential impact of multiple convictions has been considerably reduced given the procedure and limitations set forth in Pearson, supra, 42 Cal.3d at page 360, 228 Cal.Rptr. 509, 721 P.2d 595, the cautionary advisement in People v. Benson, supra, 18 Cal.4th at page 36, 74 Cal.Rptr.2d 294, 954 P.2d 557 regarding the use of multiple convictions as strikes, and the breadth of *914 section 654. Accordingly, we reject defendant's claim that double jeopardy requires reversal of his battery conviction.

IV.[***]

DISPOSITION
The trial court is directed to prepare a corrected abstract of judgment staying the sentence on count one and to forward a certified copy of the corrected abstract of judgment to the Department of Corrections and Rehabilitation. As modified, we affirm the judgment of conviction.
We concur: MORRISON and CANTIL-SAKAUYE, JJ.
NOTES
[*] Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of Parts I, II and IV of the Discussion.
[1] A reference to a section is to the Penal Code unless otherwise specified.
[2] In the interests of clarity, we shall refer to Mr. and Mrs. Cherms by their given names and intend no disrespect.
[3] Because Steven was in the process of changing banks when he went to look for his daughter, the entire contents of the Cherms' safe deposit box were in the SUV that day.
[4] Seeva identified defendant in court as the adult who tried to steal the SUV and then assaulted her. Steven also identified defendant in court as the one who hit him in the face.
[**] See footnote *, ante.
[5] A similar issue is presently before the California Supreme Court. (People v. Izaguirre, rev. granted June 8, 2005, S132980; People v. Sloan (2005) 126 Cal.App.4th 1148, 24 Cal. Rptr.3d 497, review granted June 8, 2005, S132605.)
[6] On count four the court imposed the upper term of four years (§ 245, subd. (a)(1)) plus three years for the great bodily injury enhancement (§ 12022.7, subd. (a)) and 10 years for the gang enhancement. (§ 186.22, subd. (b).) On count two it imposed a consecutive term of one year (§ 245, subd. (a)(1)) plus one year for the great bodily injury enhancement (§ 12022.7, subd. (a)) and three years four months for the gang enhancement. (§ 186.22, subd. (b).) On counts one and three the court imposed concurrent sentences as follows: on count one, a three-year term (§ 243, subd. (d)), on count three, a five-year term and five years for the gang enhancement (§ 186.22, subd. (b)) as to both counts.
[7] The instant case does not implicate either of the first two protections because it does not involve a second or successive prosecution.
[***] See footnote *, ante.