[No. H019568. Sixth Dist. Jan. 27, 2000.]

In re JOSE H., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
JOSE H., Defendant and Appellant.

## COUNSEL

Edward Mahler, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Richard Rochman, Eric D. Share, and Clifford Thompson, Deputy Attorneys General for Plaintiff and Respondent.

## OPINION

**ELIA, J.**—Following a jurisdictional hearing, the juvenile court sustained three counts of a Welfare and Institutions Code section 602 amended petition. The sustained counts included count I, assault with a deadly or dangerous weapon with force likely to produce great bodily injury (Pen. Code, § 245, subd. (a)), with a great bodily injury enhancement; count II, battery with serious bodily injury (Pen. Code § 243, subd. (d)), with a great bodily injury enhancement; and count IV, misdemeanor battery on school grounds. The court placed appellant on probation and ordered him to serve 120 days in county jail. Appellant contends he may not be convicted of both the felony assault and the battery with serious bodily injury for the same act and that a charge of battery with serious injury may not be enhanced by adding a great bodily injury allegation. Appellant contends and respondent concedes that the misdemeanor battery on school grounds, occurring on a different date and against a different victim, is barred by the one-year statute of limitations. We find the concession appropriate and strike the true finding as to this count. Appellant contends the juvenile court was without authority

to commit him to county jail. We agree and remand the matter for a new disposition order.

FACTS

In September 1998 at Salinas High School, appellant approached Travis M. and said he wanted to speak to him. Appellant accused Travis of trying to "hook up with Minerva," his girlfriend. Although Travis denied this, appellant punched him in the side of the head. Appellant used a closed fist and was wearing a gold ring. Appellant testified he did this because "I had heard that he was saying things about me and wanting to get with my girlfriend." Travis sustained three fractures to his cheekbone and was hospitalized for three days, during which he underwent surgery. Travis had blurry vision for about one week and drooping and numbness on one side of his face for several weeks.

FELONY ASSAULT/BATTERY WITH SERIOUS BODILY INJURY

█ Appellant contends he may not be convicted of both count I, felony assault where he personally inflicted great bodily injury, and count II, felony battery with serious injury. To advance this argument, appellant invites us to distinguish between "lesser included offenses" and "necessarily included offenses." Appellant uses the term "lesser included offense" to describe an uncharged less serious crime containing all the elements of the charged crime. █ Trial courts are required to give sua sponte instructions as to any uncharged lesser included offenses. (*People v. Sedeno* (1974) 10 Cal.3d 703, 715 [112 Cal.Rptr. 1, 518 P.2d 913], overruled on other grounds in *People v. Breverman* (1998) 19 Cal.4th 142, 149 [77 Cal.Rptr.2d 870, 960 P.2d 1094].) █ Appellant uses the term "necessarily included offenses" to describe the situation in which the commission of one offense necessarily results in the commission of the other for purposes of analysis and application of the rule against multiple convictions. Appellant contends this analysis "focuses more on conduct." Appellant concedes that battery with serious bodily injury is not a lesser included offense of assault with a deadly weapon or with force likely to produce great bodily injury. However, at the jurisdictional hearing, the prosecutor amended the petition to add a great bodily injury enhancement pursuant to Penal Code section 12022.7 to count II, the felony battery charge. Appellant argues that upon the sustaining of the juvenile petition alleging these two counts in the manner they were charged, he suffered multiple convictions based on necessarily included offenses. This is so because when the accused assaults someone either with a deadly weapon or by means of force likely to produce great bodily injury and in so doing, personally inflicts great bodily injury, he necessarily also commits a battery with serious injury.

Respondent does not challenge this aspect of appellant's analysis, but maintains that it is improper to consider enhancements in determining whether an offense is a lesser included offense or a necessarily included offense. The two terms, respondent argues, are used interchangeably by the courts. Indeed, it appears that both terms are used by courts analyzing the propriety of giving sua sponte instructions regarding uncharged offenses and in determining whether to apply the rule against multiple convictions. The terms themselves appear to be "equivalent." (See *People v. Ortega* (1998) 19 Cal.4th 686, 704 [80 Cal.Rptr.2d 489, 968 P.2d 48] (dis. opn. of Chin, J.).) However, this imprecision in language does not assist us in determining whether, as appellant contends, his conviction for these two offenses violates the rule against multiple convictions. The answer lies in whether we may consider the great bodily injury enhancement appended to the assault with force likely to produce great bodily injury charge to determine whether count I is necessarily included in count II for purposes of applying the doctrine against multiple convictions.

In *People v. Wolcott* (1983) 34 Cal.3d 92 [192 Cal.Rptr. 748, 665 P.2d 520], our Supreme Court rejected the defendant's contention that the trial court should have instructed sua sponte that assault with a deadly weapon is a lesser included offense of a charge of robbery enhanced by a firearm use allegation. In reaching its conclusion, the court held that a firearm use enhancement is not part of the accusatory pleading for purposes of defining lesser included offenses.[1] The considerations of the *Wolcott* court in so holding, such as notice to an accused of what he might have to defend against and the burden placed on the trial court determining which instructions to give, are absent from an analysis concerned with the rule against multiple convictions.

Appellant's claim is that sustaining the allegations of the petition for two separate offenses for the same act was impermissible. Penal Code section 954 sets forth the general rule that a defendant may be convicted of multiple offenses based on a single act or indivisible course of conduct. It states in part: "An accusatory pleading may charge two or more different offenses connected together in their commission, or different statements of the same offense . . . . The prosecution is not required to elect between the different offenses or counts set forth in the accusatory pleading, but the defendant may be convicted of any number of the offenses charged . . . ."

In *People v. Ortega, supra*, 19 Cal.4th 686, our Supreme Court observed "despite the seemingly absolute language of section 954 ('the defendant may

---

[1]Then Chief Justice Bird vigorously dissented from this part of the court's opinion, stating that not including the use enhancement in analyzing whether to instruct on a lesser included charge is "to treat a significant factual allegation which appears on the face of the pleading as if it did not exist." (*People v. Wolcott, supra*, 34 Cal.3d at p. 110 (dis. opn. of Bird, C. J.).)

be convicted of any number of the offenses charged'), there is an exception to the general rule permitting multiple convictions. 'Although the reason for the rule is unclear, this court has long held that multiple convictions may not be based on necessarily included offenses. [Citations.]' (*People* v. *Pearson* [(1986)] 42 Cal.3d 351, 355 [228 Cal.Rptr. 509, 721 P.2d 595]." (*Id.* at p. 692, italics omitted.)

We must reconcile the direct, clear statute authorizing multiple convictions for "different statements of the same offense" with the rule recognized in *Pearson* prohibiting multiple convictions based on necessarily included offenses. We note that we are not, in this case, asked to consider the burden on the court of determining sua sponte jury instructions, due process issues of notice to a defendant of what charges he or she may have to defend against at trial, double punishment upon conviction or double jeopardy following a mistrial of one count. These considerations are present in cases using the phrases lesser included and necessarily included in their analyses. Yet, the impact of declining to consider count II a necessarily included offense of count I is considerable. Both counts arise from the single punch appellant threw at Travis. Both counts as they are charged, assault with force likely to produce great bodily injury where the accused personally inflicts great bodily injury and battery with serious injury where the accused is the lone perpetrator are serious felonies within the meaning of Penal Code section 1192.7, subdivision (c)(8) and may be charged as strikes in subsequent adult prosecutions. (Pen. Code, § 667, subd. (d)(3).) Although appellant is rightfully concerned that as a result of this adjudication he is now subject to potential punishment of 25 years to life in state prison for throwing one punch in a schoolyard dispute, this is clearly what the prosecutor intended, as his opposition to appellant's motion to strike the enhancement makes clear. One may consider this an appropriate charging decision for a prosecutor assigned to juvenile court, or an abhorrent exercise in overzealousness, or something in between. Regardless, section 954 appears to authorize this manner of charging and the limited case law created exception to section 954 described in *Pearson* does not prevent it. Appellant cites no cases, and our research discloses none, that permit considering enhancements for determining lesser included or necessarily included offenses for any purpose. Because the rule recognized in *Pearson* carves out an exception to a statute that appears to specifically authorize multiple convictions based on the same conduct, we decline to accept appellant's invitation to expand the definition of necessarily included offenses beyond its existing boundaries. Those boundaries limit our consideration of whether count I and count II are necessarily included offenses of one another to the elements of the offenses charged, not the stated offenses with their attached enhancements. Assault with force likely to produce great bodily injury is not a lesser

included offense of battery with serious bodily injury. (*People v. Corning* (1983) 146 Cal.App.3d 83, 89-91 [194 Cal.Rptr. 27].) The trial court properly sustained counts I and II of the petition.

Appellant contends that a charge of battery with serious injury may not be enhanced by adding a great bodily injury allegation pursuant to Penal Code section 12022.7, subdivision (a). Appellant relies on *People v. Hawkins* (1993) 15 Cal.App.4th 1373 [19 Cal.Rptr.2d 434] and *People v. Otterstein* (1987) 189 Cal.App.3d 1548 [235 Cal.Rptr. 108]. These cases hold that pursuant to Penal Code section 654, when a defendant is sentenced for violating section 243, subdivision (d), battery with serious injury, the sentencing court should not impose a separate sentence for a great bodily injury enhancement. In *Hawkins*, the court did not vacate the enhancement, but remanded the matter for resentencing. In *Otterstein*, the court held that imposing sentence on the battery with serious injury and the great bodily injury enhancement was permissible because the defendant had pled guilty to the battery and admitted the enhancement as part of a plea bargain.

Here, appellant did not receive a separate sentence for the great bodily injury enhancement to his charge of battery with serious bodily injury. Defense counsel did not object at the time the petition was amended to allege the enhancement to the battery count, but did file a motion to strike the enhancement. The prosecutor filed an opposition arguing "the principal significance of the P[enal] C[ode] section 12022.7 enhancement under Count II is to qualify and perfect the offense for treatment as a 'strike' in the future, should the ward continue to commit felony criminal offenses. The fact that the enhancement may not additionally be used to extend the maximum period of incarceration is immaterial." The court denied appellant's motion to strike the enhancement. Neither *Hawkins* nor *Otterstein* is authority for striking the enhancement; appellant was not punished twice for the battery and the enhancement. The trial court properly denied appellant's motion to strike the enhancement.

COUNTY JAIL COMMITMENT

██ Appellant, 17 years old at the time of the offense, turned 18 shortly before disposition. The juvenile court placed appellant on probation for three years. He was released to the custody of his parents but ordered to serve 120 days in the county jail with no good time/work time credits. He contends the juvenile court had no authority to commit him directly to county jail. He also argues that the juvenile court failed to make the requisite findings that he should be removed from the physical custody of his parents before committing him to county jail, that if his commitment to county jail is proper, he is

entitled to earn conduct credits to reduce his confinement time, and that denying him conduct credits is a violation of equal protection.

We agree that the juvenile court lacked authority to commit appellant directly to county jail. Welfare and Institutions Code section 202, subdivision (b) provides in part: ". . . Minors under the jurisdiction of the juvenile court as a consequence of delinquent conduct shall, in conformity with the interests of public safety and protection, receive care, treatment, and guidance that is consistent with their best interest, that holds them accountable for their behavior, and that is appropriate for their circumstances. This guidance may include punishment that is consistent with the rehabilitative objectives of this chapter."

Subdivision (e) of Welfare and Institutions Code section 202 explains that "punishment" means the imposition of sanctions which may include the following: "(1) Payment of a fine by the minor. [¶] (2) Rendering of compulsory service without compensation performed for the benefit of the community by the minor. [¶] (3) Limitations on the minor's liberty imposed as a condition of probation or parole. [¶] (4) *Commitment of the minor to a local detention or treatment facility, such as a juvenile hall, camp, or ranch.* [¶] (5) *Commitment of the minor to the Department of the Youth Authority.* [¶] 'Punishment,' for the purposes of this chapter, does not include retribution." (Italics added.)

The various specified commitment options do not include county jail. Although the statute speaks of *minors* under the jurisdiction of the juvenile court, appellant, by turning age 18 during these proceedings, became an *adult* under the jurisdiction of the juvenile court. In respondent's view, this expands the dispositional alternatives of the juvenile court to include a county jail commitment. As authority for this proposition, respondent cites Welfare and Institutions Code section 208.5 which provides: "Notwithstanding any other provision of law, in any case in which a minor who is detained in or committed to a county institution established for the purpose of housing juveniles attains the age of 18 prior to or during the period of detention or confinement he or she may be allowed to come or remain in contact with those juveniles until the age of 19, at which time he or she, upon the recommendation of the probation officer, shall be delivered to the custody of the sheriff for the remainder of the time he or she remains in custody, unless the juvenile court orders continued detention in a juvenile facility. The person shall be advised of his or her ability to petition the court for continued detention in a juvenile facility at the time of his or her attainment of the age of 19. Notwithstanding any other provision of law, the sheriff may

allow such a person to come into and remain in contact with other adults in the county jail or in any other county correctional facility in which he or she is housed."[2]

Welfare and Institutions Code section 208.5 is one in a series of statutes regulating the custodial segregation of adults and juveniles. For example, section 208 prohibits contact between a "ward or dependent child of the juvenile court" committed to any state hospital or other state facility and any "adult person" committed to such a facility as a specified type of sex offender. None of these statutes, including section 208.5, purport to expand the authority of the juvenile court beyond the dispositional alternatives specified in section 202, subdivision (e).

At oral argument, respondent suggested that Welfare and Institutions Code section 737, subdivision (a), supports respondent's position. Section 737, subdivision (a) provides: "Whenever a person has been adjudged a ward of the juvenile court and has been committed or otherwise disposed of as provided in this chapter for the care of wards of the juvenile court, the court may order that the ward be detained in the detention home, or in the case of a ward of the age of 18 years or more, in the county jail or otherwise as the court deems fit until the execution of the order of commitment or of other disposition." As subdivision (b) of section 737 makes clear, this detention alternative is a temporary one, not a final disposition.[3] Section 737 does not expand the range of final dispositions beyond those specified in section 202. It simply provides a detention alternative for 18-year-old wards awaiting a proper juvenile court disposition.

*In re Kirk G.* (1977) 67 Cal.App.3d 538, 539-540 [136 Cal.Rptr. 706], relying on *In re Maria A.* (1975) 52 Cal.App.3d 901, 903-904 [125 Cal.Rptr. 382], holds the juvenile court may not place a ward in an adult facility such as a county jail. Respondent argues that these 1970's cases predate and are superseded by the 1984 enactment of Welfare and Institutions Code section 208.5. Respondent contends that "times have changed" since these cases

---

[2]A jail, as defined in Welfare and Institutions Code section 207.1, subdivision (i)(1), is a "locked facility administered by a law enforcement or governmental agency, the purpose of which is to detain adults who have been charged with violations of criminal law and are pending trial, or to hold convicted adult criminal offenders sentenced for less than one year."

[3]Subdivision (b) of Welfare and Institutions Code section 737 provides "In any case in which a minor is detained for more than 15 days pending the execution of the order of commitment or of any other disposition, the court shall periodically review the case to determine whether the delay is reasonable. These periodic reviews shall be held at least every 15 days, commencing from the time the minor was initially detained pending the execution of the order of commitment or of any other disposition, and during the course of each review the court shall inquire regarding the action taken by the probation department to carry out its order, the reasons for the delay, and the effect of the delay upon the minor."

were decided, and so they may have. However, despite subsequent amendments to section 202, as recently as 1999, the Legislature has not expanded the specified commitment alternatives to include county jail for a ward of the juvenile court.

The only other possible source of authority for a juvenile court ward's county jail commitment is Welfare and Institutions Code section 727, which permits the court to "make any and all reasonable orders for the care, supervision, custody, conduct, maintenance, and support of the minor, including medical treatment, subject to further order of the court." This provision allows the court to exercise discretion in making an alternative disposition for a ward, but that exercise of discretion is not unlimited. As the *Kirk G.* court observed, "The Juvenile Court Law carefully sets forth this kind of dispositional order that a juvenile court can make." (67 Cal.App.3d at p. 540.) The choice of places to which the court can commit a ward is essentially a legislative rather than a judicial prerogative. The court's authority to make "any and all reasonable orders for the . . . custody" of a ward is confined to the custodial dispositions provided for in other sections of the Welfare and Institutions Code, notably section 202.[4]

We sympathize with the dilemma of the juvenile court searching for an appropriate disposition for an 18-year-old ward. We understand the alternatives are limited, and vary from county to county.[5] We also recognize that there may be circumstances in which an 18-year-old ward might prefer a county jail commitment to an alternative in the juvenile system. Nonetheless, the parties cannot, by stipulation, create statutory authority where none exists. We are constrained by the express language of the applicable statutes to hold that the juvenile court is not authorized to commit a ward to county jail. The juvenile court is a creature of statute, and remains unique and different from the adult court system. Should the Legislature see fit to expand the range of dispositional alternatives to include county jail for 18-year-old wards, they will do so. It is the province of the Legislature and

---

[4]Welfare and Institutions Code section 726 provides ". . . In any case in which the minor is removed from the physical custody of his or her parent or guardian" after an order of wardship under Welfare and Institutions Code section 602, "the order shall specify that the minor may not be held in physical confinement for a period in excess of the maximum term of imprisonment which could be imposed upon an adult convicted of the offense or offenses which brought or continued the minor under the jurisdiction of the juvenile court." Under section 726, "Physical confinement" is deemed as "placement in a juvenile hall, ranch, camp, forestry camp or secure juvenile home pursuant to [Welfare and Institutions Code] Section 730, or in any institution operated by the Youth Authority." Again, there is no mention of county jail as an authorized placement for physical confinement.

[5]Apparently, a county jail commitment for an 18-year-old ward is fairly routine in Butte County. (See 81 Ops.Cal.Atty.Gen. 418 (1998).)

not the courts to enact changes in the court's custodial disposition alternatives. Clearly, any change in current law must be addressed by the Legislature. Until then, the juvenile court is bound by those dispositional alternatives specified in Welfare and Institutions Code section 202, subdivision (e).

Welfare and Institutions Code section 726 and California Rules of Court, rule 1493 require the juvenile court to make certain findings, such as that a minor has been tried on probation and failed to reform, before removing the minor from his parents' physical custody. Here, the juvenile court ordered that appellant remain in his parents' care, but directed that he serve 120 days in the county jail. Appellant argues this condition of probation effectively removed him from the physical care and custody of his parents without making the required finding under section 726 and rule 1493. On remand for disposition, the court is directed to consider the findings required by Welfare and Institutions Code section 726 and California Rules of Court, rule 1493. In light of our holding, we do not consider whether appellant is entitled to conduct credits.

DISPOSITION

The true finding as to count IV, a violation of Penal Code section 243.2 (misdemeanor battery on school grounds), is stricken. The juvenile court order of jurisdiction is otherwise affirmed. The disposition order of January 5, 1999, is reversed. The matter is remanded for a new disposition order.

Cottle, P. J., and Premo, J., concurred.

Appellant's petition for review by the Supreme Court was denied May 10, 2000. Kennard, J., and Werdegar, J., were of the opinion that the petition should be granted.