Filed 11/20/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| R.E.,<br><br>　　　Petitioner,<br><br>　　v.<br><br>THE SUPERIOR COURT OF SANTA CLARA COUNTY,<br><br>　　　Respondent;<br><br>THE PEOPLE,<br><br>　　　Real Party in Interest. | H046541<br>(Santa Clara County<br>Super. Ct. No. 15JV41464H & I) |

Minor R.E. petitions for a writ of mandate challenging respondent court's order granting the People's motion to transfer him from juvenile court to a court of criminal jurisdiction.  (See Welf. & Inst. Code, § 707, subd. (a)(1).)[1]

On appeal, R.E. argues the juvenile court erred in granting the motion to transfer because it incorrectly determined it lacked authority to order him into custody on a probation violation once he turns 19.  R.E. also argues that the probation department's delay in producing a "ranch failure" report violated his right to due process.

We agree the juvenile court erred in concluding it would not have the authority to order R.E. into custody if he violated probation after turning 19.[2]  We will therefore issue

---

[1] Unspecified statutory references are to the Welfare and Institutions Code.

[2] We therefore do not reach R.E.'s alternative argument that he was prejudiced by the delayed disclosure of the ranch failure report.

a peremptory writ commanding respondent court to vacate the challenged order and issue a new order denying the motion to transfer.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

In April and June 2018, the Santa Clara County District Attorney filed juvenile wardship petitions (§ 602, subd. (a)) alleging that petitioner R.E., who was born in June 2000 and had been a ward of the juvenile court since 2016, committed two separate first degree burglaries (Pen. Code, § 460, subd. (a)), one in January 2018 and the other in April 2018.

### A.  *Motion to transfer*

On the basis of the April and June 2018 wardship petitions, the district attorney moved to transfer R.E. to adult criminal court.  (§ 707, subd. (a); see also Cal. Rules of Court, rule 5.766(a).)

#### 1.  *Probation officer's report*

In July 2018, the probation officer prepared her report for the transfer hearing, recommending that R.E. be transferred to adult court.  In her report, the probation officer recounted R.E.'s juvenile criminal history, which began when he was declared a ward of the court in January 2016.  R.E. was continued as a ward of the court in February and again in April 2016 for violating his probation by not adhering to court orders, failing drug tests, refusing to attend school, etc.

In June 2017, R.E. was ordered to a ranch program following his involvement in several offenses including carjacking, vehicle theft, and robbery.  He completed the custodial portion of the ranch program in December 2017 and was placed on the "Ranch Pre-Release program."  However, after testing positive for drugs and missing school, R.E. was returned to the ranch in January 2018.  R.E. went back and forth between the ranch and the pre-release program for the next few months until he was arrested for the burglaries alleged in the April and June 2018 juvenile wardship petitions.

2

## 2. *Ranch failure report*

Due to his arrest, R.E. was "failed" from the ranch program, but in the "ranch failure" report prepared by Salvador Heredia, R.E.'s supervising probation counselor, Heredia recommended that R.E. be returned to the ranch. Heredia's report was not disclosed to or provided to R.E.'s counsel until two weeks before the transfer hearing.[3]

## 3. *Transfer hearing*

Heredia testified[4] at the transfer hearing about the ranch failure report, stating that when he wrote it in June 2018, R.E. was then 17 years old and would, if returned to the ranch, have had until he turned 19 to complete the program.[5] However, Heredia said although he recommended in the report that R.E. return to the ranch, his recommendation had changed in the interim and he no longer recommended that R.E. return. According to Heredia, there would not be enough time for R.E. to complete all of the programming before he turned 19, and the ranch and aftercare program could not accommodate 19-year-olds.

The juvenile court sought briefing from the parties on whether it would have the authority to "hold a minor over the age of 19 in county jail" for a noncriminal probation violation. The district attorney relied on *In re Jose H*. (2000) 77 Cal.App.4th 1090 (*Jose H*.) and *In re Kenny A*. (2000) 79 Cal.App.4th 1 (*Kenny A*.) to support the argument that a juvenile court may not order county jail confinement as punishment if a ward violates juvenile probation after turning 19. R.E., on the other hand, citing *In re Charles G*. (2004) 115 Cal.App.4th 608 (*Charles G*.), argued that section 208.5 does authorize the sheriff to take custody of any person 19 or older for violating their juvenile probation.

---

[3] See footnote 2, *ante*.

[4] The parties did not provide a reporter's transcript of Heredia's testimony, so we rely on the juvenile court's summary of his testimony as set forth in the order granting the motion to transfer.

[5] According to Heredia, the ranch program consisted of a six- to eight-month period at the ranch plus a 10-week aftercare program.

Following argument, the juvenile court granted the motion to transfer.  In its order, the juvenile court noted that, despite believing that R.E. was amenable to treatment as a juvenile,[6] he should be transferred to adult criminal court because it "need[ed] the ability to use custody as an incentive for rehabilitation" and "confinement [in county jail] would not be an available disposition under juvenile law if [he] were found to have violated probation after turning 19."  It wrote, "If the court could hold [R.E.] accountable up until the age of 21 with a custodial consequence as a part of the rehabilitation plan it would have kept [him] in Juvenile Court."  In the court's view, *Jose H*. and *Kenny A*. "tell[] the Juvenile Court Judge that the ability to supervise a case until the age of 21 is allowed, but that using [county jail] custody is not an option, therefore the youth must be sent to adult court if custody after the age of 19 is needed for the rehabilitation of the youth who has committed a series of dangerous but non-violent crimes close to the age of 18."

The juvenile court ordered that R.E. remain in juvenile hall "until the age of 19 or until the Court of Appeal has decided his Writ or until further court order, whichever comes first."  R.E. turned 19 in June 2019.

## II.    DISCUSSION

R.E. argues the juvenile court erred in granting the motion to transfer because it did, in fact, have the authority under the relevant statutes to order his confinement in the county jail were he to violate his juvenile probation after he turned 19.  We agree.

### A.    *Standard of review and relevant statutes*

" 'Issues of statutory interpretation are questions of law subject to de novo review.' " (*People v. Martinez* (2016) 5 Cal.App.5th 234, 240.)  In interpreting a statute,

---

[6] In analyzing the five transfer criteria set forth in section 707, subdivision (a), the juvenile court found that three of those five criteria (i.e., degree of criminal sophistication, delinquency history, and the circumstances and gravity of current offenses) supported retaining R.E. in the juvenile court.  The remaining two criteria (i.e., the chance of rehabilitating the minor before the juvenile court's jurisdiction expired and the result of the juvenile court's previous attempts to rehabilitate the minor) militated in favor of R.E. being transferred to adult court.

4

" 'our fundamental task . . . is to determine the Legislature's intent so as to effectuate the law's purpose.' [Citation.] 'We begin with the plain language of the statute, affording the words of the provision their ordinary and usual meaning and viewing them in their statutory context, because the language employed in the Legislature's enactment generally is the most reliable indicator of legislative intent.' [Citations.] The plain meaning controls if there is no ambiguity in the statutory language." (*People v. Cornett* (2012) 53 Cal.4th 1261, 1265.) " 'Additionally, however, we must consider the [statutory language] in the context of the entire statute [citation] and the statutory scheme of which it is a part.' " (*Phelps v. Stostad* (1997) 16 Cal.4th 23, 32.) The words used in a statute " ' " 'must be construed in context, keeping in mind the nature and obvious purpose of the statute where they appear.' [Citations.] Moreover, the various parts of a statutory enactment must be harmonized by considering the particular clause or section in the context of the statutory framework as a whole." ' " (*Ibid.*)

Section 208.5, subdivision (a), provides in relevant part: "Notwithstanding any other law, in any case in which a minor who is detained in or committed to a county institution established for the purpose of housing juveniles attains 18 years of age prior to or during the period of detention or confinement he or she may be allowed to come or remain in contact with those juveniles until 19 years of age, at which time he or she, upon the recommendation of the probation officer, shall be delivered to the custody of the sheriff for the remainder of the time he or she remains in custody, unless the juvenile court orders continued detention in a juvenile facility. . . . Notwithstanding any other law, the sheriff may allow the person to come into and remain in contact with other adults in the county jail or in any other county correctional facility in which he or she is housed."

Section 202 lists punishment options for a minor who is under the juvenile court's jurisdiction. The statute makes clear that, in the juvenile court context, " 'punishment' means the imposition of sanctions[,] [but] does not include retribution." (§ 202,

5

subd. (e).) "Permissible sanctions" under the statute include, as relevant here, "[c]ommitment of the minor to a local detention or treatment facility, such as a juvenile hall, camp, or ranch." (§ 202, subd. (e)(4).)

In interpreting the relevant statutes, we must keep in mind the twofold purposes of the juvenile delinquency laws: "(1) to serve the 'best interests' of the delinquent ward by providing care, treatment, and guidance to rehabilitate the ward and 'enable him or her to be a law-abiding and productive member of his or her family and the community,' and (2) to 'provide for the protection and safety of the public.' " (*Charles G.*, *supra*, 115 Cal.App.4th at p. 614.)

### B.     Analysis

In *Jose H.*, the juvenile was 17 when he committed the criminal acts which were the basis for the juvenile wardship petition but turned 18 shortly before disposition. (*Jose H.*, *supra*, 77 Cal.App.4th at p. 1096.) The juvenile court placed him on probation, but further ordered that he serve 120 days in county jail. (*Ibid.*) This court reversed on the ground that county jail is not one of the specified commitment options set forth in section 202, subdivision (e)(4). (*Jose H.*, *supra*, at p. 1097.)

Looking at section 208.5, which provides that when a ward in a juvenile facility turns 19, "he or she, upon the recommendation of the probation officer, shall be delivered to the custody of the sheriff for the remainder of the time he or she remains in custody" (*id.*, subd. (a)), the court construed the statute as "one in a series of statutes regulating the custodial segregation of adults and juveniles," none of which "purport to expand the authority of the juvenile court beyond the dispositional alternatives specified in section 202, subdivision (e)." (*Jose H.*, *supra*, 77 Cal.App.4th at p. 1098.) Although we "sympathize[d] with the dilemma of the juvenile court searching for an appropriate disposition for an 18-year-old ward" (*id.* at p. 1099), this court concluded that under the plain language of sections 202 and 208.5, "the juvenile court is not authorized to commit a ward to county jail." (*Jose H.*, *supra*, at p. 1099.)

6

Similarly, in *Kenny A*., the appellant was under 18 at the time of his offense but had turned 18 by the time of disposition. (*Kenny A*., *supra*, 79 Cal.App.4th at p. 3.) The probation report recommended declaring appellant a ward of the court and directing him to serve 180 days in county jail, since " 'he cannot utilize many of the Juvenile Probation Department's services.' " (*Id*. at p. 4.) At the end of the disposition hearing, the court addressed the assistant principal at appellant's high school, saying " 'I think you can get the message back to kids . . . that this is serious business. And if they're under 18 but close to 18 or even 18 at the time of disposition in juvenile court *they're going to spend time in the county jail*.' " (*Ibid*., italics added.) The court made appellant a ward of the court, committed him to juvenile hall for 180 days but then advised appellant's father, " 'You're going to take him down to the juvenile hall. . . . [He] will then be *committed to the county jail*, and remanded to the custody of the Department of Corrections.' " (*Id*. at pp. 4-5, italics added.)

On appeal, this court found the "[t]he [juvenile] court's comments at the time of disposition clearly indicate it intended the disposition to be, for all practical purposes, a county jail commitment[] . . . [and] accept[ing] this procedural subterfuge as proper would be to condone an unauthorized disposition." (*Kenny A*., *supra*, 79 Cal.App.4th at p. 8.) Though we recognized that "section 208.5 does permit housing a ward in county jail *under certain circumstances*, . . . it does not allow the juvenile court to commit an 18-year-old to county jail as part of its disposition order." (*Id*. at p. 6, italics added.)

In *Charles G*., the Third District Court of Appeal parted ways with *Jose H*. and *Kenny A*. and concluded that section 208.5 does authorize the juvenile court to order a county jail commitment for juvenile probation violations committed by a ward on or after he or she turns 19. The appellant in *Charles G*. was initially adjudged a ward of the juvenile court at the age of 15 and, after he had turned 20 years old, the appellant violated his juvenile probation. (*Charles G*., *supra*, 115 Cal.App.4th at p. 612.) The juvenile court, after acknowledging "that it could not 'make a direct commitment to the county

7

jail . . . [,]' . . . noted that section 208.5 authorizes the probation officer to exercise discretion to . . . 'remove [appellant] from juvenile hall to the county jail.' " (*Id.* at p. 617.) The juvenile court directed appellant to "serve a specified period of confinement 'in an authorized facility.' " (*Ibid.*)

On appeal, the court agreed with *Jose H.* and *Kenny A.* to the extent they stood for the proposition "that a juvenile court cannot commit a ward over the age of 17 *directly* to county jail." (*Charles G.*, *supra*, 115 Cal.App.4th at p. 618, italics added.) However, the court continued, "it does not follow that the court cannot commit a ward *19 years of age or older* to a juvenile detention facility with the understanding that, because the probation officer so recommends, the ward will be delivered to the sheriff for confinement in county jail pursuant to section 208.5." (*Id.* at pp. 618-619, italics added.) Such a disposition does not amount to the " 'procedural subterfuge' " disapproved of in *Kenny A.* but is rather "a legitimate application of the statutory scheme that allows the now-adult ward to be housed in a juvenile detention facility until the age of 19, at which time he or she must be delivered to a local adult facility unless the court orders continued detention in the juvenile facility. (§ 208.5.)" (*Id.* at p. 619.)

The *Charles G.* court "interpret[ed] section 202, subdivision (e), and section 208.5 to apply to a person (1) who was declared a ward of the juvenile court while a minor, (2) who became an adult upon turning 18 but remained under the jurisdiction of the juvenile court, and (3) who violated juvenile court probation after becoming an adult." (*Charles G.*, *supra*, 115 Cal.App.4th at p. 615.) "[W]hen an adult ward violates probation while still under the jurisdiction of the juvenile court, subdivision (e) of section 202 authorizes the court to punish the ward by committing him or her 'to a local detention or treatment facility, such as a juvenile hall, camp, or ranch.' (§ 202, (e)(4).)" (*Id.* at p. 618.) Since section 208.5 provides that the ward—if 19 or older—may be delivered by the sheriff to a local adult detention facility, the court concluded "if the ward is found to have violated probation, sections 202 and 208.5 authorize the court to order

8

the ward to be confined in a juvenile facility and then, upon recommendation of the probation officer, immediately delivered to a local adult facility to serve the period of confinement." (*Charles G.*, *supra*, at p. 612.)

The court declined to extend the rationale set forth in *Jose H.* and *Kenny A.* beyond their facts, because doing so "would make a juvenile court reluctant to place a ward on probation when the ward is days or months shy of his or her 18th birthday." (*Charles G.*, *supra*, 115 Cal.App.4th at p. 616.) In those circumstances, "hav[ing] no option to detain and punish the ward if he or she violated probation after becoming an adult[] . . . the juvenile court would be more inclined to commit him or her to the California Youth Authority [now DJJ]." (*Ibid.*) Forbidding commitment of a ward 19 years of age or older to county jail for violating juvenile probation "generate[s] an absurd result, inconsistent with the purpose of the statutory scheme to hold wards 'accountable for their behavior' by imposing punishment 'in conformity with the interests of public safety and protection.' (§ 202, subd. (b).)" (*Id.* at p. 619.)

We agree that, in the circumstances involved in this case, interpreting the statutes to deny juvenile courts the authority to order commitment for wards who violate probation on or after their 19th birthdays leads to an inappropriate result. Adult wards like R.E., who are accused of less serious non-section 707, subdivision (b) offenses will end up in adult criminal court whereas wards with more serious section 707, subdivision (b) offenses can be retained in juvenile custody until age 25. (§ 1769.) Such a result is inconsistent not only with the detention and commitment options set forth in section 202, subdivision (e), and section 208.5, but also "with the best interests of delinquent wards and the rehabilitative purpose of the statutory scheme." (*Charles G.*, *supra*, 115 Cal.App.4th at p. 616.)

## III.  DISPOSITION

Let a peremptory writ of mandate issue compelling respondent court to vacate its order granting the motion to transfer petitioner to criminal court and to enter a new order

9

denying the motion to transfer.  This opinion is made final as to this court seven days from the date of filing.  (Cal. Rules of Court, rule 8.490(b)(2)(A).)  The temporary stay order shall remain in effect until this decision is final.

_____

                                    Premo, J.


WE CONCUR:




_____

            Greenwood, P.J.




_____

            Grover, J.




<u>R.E. v. Superior Court</u>
H046541

| Trial Court: | Santa Clara County Superior Court Superior Court No. 15JV41464H & I |
|---|---|
| Trial Judge: | Hon. Katherine Lucero |
| Counsel for Real Party in Interest: The People | Xavier Becerra Attorney General

Gerald A. Engler Chief Assistant Attorney General

Jeffrey M. Laurence Senior Assistant Attorney General

Laurence K. Sullivan Supervising Deputy Attorney General

René A. Chacón Supervising Deputy Attorney General |
| Counsel for Petitioner: R.E. | By appointment of the Court under the Santa Clara County Independent Defense Counsel Office

Eric Weaver

Lana M. Kreidie |
| Counsel for Respondent: Superior Court of Santa Clara County, Juvenile Division | No appearance for respondent |

R.E. v. Superior Court
H046541