Filed 6/9/23 P. v. Casillas CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| THE PEOPLE, | C096168 |
| Plaintiff and Respondent, | (Super. Ct. No. STK-CR-FE-2021-0005612) |
| v. | |
| MANUEL SUE CASILLAS, | |
| Defendant and Appellant. | |

A jury found defendant Manuel Sue Casillas guilty of driving or taking a BMW and receiving that same (stolen) BMW. It also found him guilty of carjacking a Mustang, and of several counts based on his actions related to the carjacking: assault with a deadly weapon, driving or taking the Mustang, receiving that same (stolen) Mustang, and misdemeanor hit and run.

On appeal, defendant argues he cannot be convicted of both carjacking the Mustang and unlawfully driving it, because unlawful driving of the car is a necessarily included lesser offense of carjacking. He also argues remand for resentencing is required because the trial court violated Penal Code section 654[1] when it imposed unstayed sentences for both crimes related to the BMW and for all five crimes related to the Mustang. The Attorney General concedes the section 654 error as to the Mustang but argues for stay of sentence on the four counts related to the carjacking rather than remand. We shall modify the judgment to stay the sentences on the four counts related to the carjacking and affirm the judgment as modified.

## BACKGROUND

The amended information charged defendant with unlawful driving or taking a vehicle (BMW) without consent (Veh. Code, § 10851, subd. (a)--count 1); receiving a stolen vehicle (BMW) (§ 496d, subd. (a)--count 2); carjacking (Mustang) (§ 215, subd. (a)--count 3); assault with a deadly weapon (Mustang) (§ 245, subd. (a)(1)--count 4); unlawful driving or taking a vehicle (Mustang) (Veh. Code, § 10851, subd. (a)--count 5); receiving a stolen vehicle (Mustang) (§ 496d, subd. (a)--count 6); vandalism (§ 594, subd. (b)(1)--counts 7 and 8); and hit and run (Mustang) (Veh. Code, § 20002, subd. (a)--count 9). The information also alleged an on-bail/own recognizance enhancement, a serious felony enhancement, and that defendant had a prior serious felony conviction. (§§ 12022.1, 667, subd. (a), 1170.12, subd. (b).)

---

[1] Undesignated statutory references are to the Penal Code.

2

*The BMW--Counts One and Two*

On May 5, 2021, Hertz Rental Car (Hertz) rented a 2020 black convertible BMW from its Pleasanton location for one day. Because the renter had not returned it as of June 1, 2021, Hertz reported the BMW as stolen to the police. Hertz also discovered the renter had used fraudulent identification to rent the car.

On June 1, 2021, a San Joaquin County Sheriff's deputy spotted defendant driving the BMW. Law enforcement followed the BMW for about an hour while defendant drove erratically. Officers then observed defendant park the BMW in a grocery store parking lot and wait. When a sport utility vehicle (SUV) parked next to him, he got into the SUV's rear seat.

When officers took defendant into custody, he had the key fob for the BMW in his pocket. The BMW's gear selector knob was missing, and the radio and the plastic around the steering column were removed. Pieces of the exhaust system that had been cut from the BMW were located inside the passenger compartment. The BMW was also missing its catalytic converter.

Officers found the gearshift selector knob in the back seat of the SUV when they arrested defendant. At defendant's home, officers found the floor mat and plastic pieces from the BMW in a covered carport. They also found parts of the BMW's exhaust system, its muffler, and a battery powered grinder.

When questioned by law enforcement, defendant said he knew he was being followed and was purposefully "driving crazy." He said he traded $1,200 worth of stereo speakers to someone named Magic at a nearby motel for the BMW. Defendant claimed Magic was a 40-year-old Hispanic man, and defendant was due to make some additional $500 payments to Magic for the BMW but had no way to contact Magic. Defendant did not have a bill of sale nor did he have the title to the BMW. He admitted he cut the pieces of the exhaust system off the BMW.

Defendant said he thought the BMW was worth about $50,000, but he bought it for "street value" or "street price." In the opinion of law enforcement, "street price" is slang for "stolen."

*The Mustang--Counts 3 through 6, Count 9*

On July 27, 2021, Avis Budget Group (Avis) rented a 2021 white Mustang from its Sacramento Airport location for a three-day term. The renter did not return the Mustang and efforts to contact the renter failed. Avis placed the Mustang on their repossession list on August 10, 2021.

On August 11, 2021, Avis hired Ripon Auto Body and Tow (owned by E.C.) to repossess the Mustang. E.C. went to the address given to him by Avis, which was defendant's residence, in his unmarked white truck and trailer and found the Mustang. E.C. tried to box the Mustang in with his truck and trailer while he waited for one of his drivers to arrive with a tow truck.

E.C. also attempted to secure the Mustang to his truck with straps so it could not be driven away before his tow truck driver arrived; when he went back to his truck to get a longer strap, defendant arrived and jumped into the Mustang. E.C. tried to hold the Mustang door open, but when defendant started the Mustang, E.C. let go.

Defendant backed the Mustang about one and one-half feet into E.C.'s truck. E.C. was trapped between the Mustang and his truck and was scared he was going to be crushed between the cars. Defendant then drove away. At trial, the prosecution showed the jury a video of the attempted repossession, defendant's theft, and his subsequent escape. The entire interaction took slightly more than 20 seconds.

Avis provided the police with GPS information on the Mustang. Officers located the Mustang a little over seven miles from the original location. When the officers arrived, they saw defendant walking away from the Mustang. Officers contacted defendant and asked if the Mustang was his "ride." Defendant responded, "No, I'm in

4

the green car." But defendant had a key fob for the Mustang; when confronted with this fact, defendant did not respond.

At trial, defendant did not testify.

The jury found defendant guilty of all counts *except* counts 7 and 8, the two vandalism counts. Prior to sentencing, defendant filed a sentencing brief wherein he reminded the trial court of its obligation under section 654 to not impose more than one punishment for a single act or omission, related to charges involving the BMW and Mustang incidents. Defendant also advised the court of the recent changes to section 654 that conferred on the court the discretion to select the base term from any of the charges related to a single act or omission. As to the BMW, defendant asked the court to stay punishment on count 2--receiving the stolen BMW. As to the Mustang, defendant asked the court to impose unstayed punishment for counts 4--assault with a deadly weapon, and 5--driving or taking the Mustang and to stay the sentences on the remaining three counts. At the sentencing hearing held on April 25, 2022, defense counsel repeated this request orally.

The trial court found several circumstances in aggravation: The victim was extremely vulnerable, defendant had a prior record and had failed to successfully complete parole or probation, and he had a history of violence. The court sentenced defendant to the upper term of nine years on count 3, carjacking, doubled to 18 years due to his strike. The court also imposed five years for defendant's prior conviction under section 667, subdivision (a) and added an additional two years for committing the Mustang offenses while released on his own recognizance. The court imposed the middle term on each of the other counts to run concurrently with the 25-year sentence on count 3: two years for count 1--unlawful driving or taking the BMW; two years on count 2--receiving stolen BMW ; three years on count 4--assault with a deadly weapon; two years on count 5--unlawful driving or taking the stolen Mustang; and two years on count 6--receiving the stolen Mustang; and time served for the count 9 (erroneously identified as

5

count 7 in the court's statement)--misdemeanor hit and run with the Mustang. Defendant timely appealed.

## DISCUSSION

### I

### *Carjacking and Unlawful Driving of the Same Vehicle*

Defendant argues he cannot be convicted of both carjacking the Mustang (§ 215, subd. (a)) and unlawfully driving or taking it (Veh. Code, § 10851, subd. (a)) because the latter crime is necessarily a lesser included offense of carjacking. We disagree.

Section 954 allows multiple convictions for different or distinct offenses based on the same act or course of conduct. (*People v. Vidana* (2016) 1 Cal.5th 632, 649.) The statute explicitly permits the charging of "two or more different offenses connected together in their commission, or different statements of the same offense." (§ 954.) One exception provides that multiple convictions may not be based on necessarily included offenses. (*In re Jose H.* (2000) 77 Cal.App.4th 1090, 1094-1095.) Thus, we must determine whether unlawfully driving or taking a vehicle is a necessarily included offense of carjacking.

" 'Carjacking' is the felonious taking of a motor vehicle in the possession of another, from his or her person or immediate presence, or from the person or immediate presence of a passenger of the motor vehicle, against his or her will and with the intent to either permanently or temporarily deprive the person in possession of the motor vehicle of his or her possession, accomplished by means of force or fear." (§ 215, subd. (a).) Unlawful driving or taking of a vehicle, is committed when a person "drives or takes a vehicle not his or her own, without the consent of the owner . . . and with intent either to permanently or temporarily deprive the owner . . . of his or her title to or possession of the vehicle, whether with or without intent to steal the vehicle." (Veh. Code, § 10851, subd. (a).)

6

"In deciding whether an offense is necessarily included in another, we apply the elements test, asking whether ' " 'all the legal ingredients of the corpus delicti of the lesser offense [are] included in the elements of the greater offense.' [Citation.]" ' [Citation.] In other words, 'if a crime cannot be committed without also necessarily committing a lesser offense, the latter is a lesser included offense within the former.' " (*People v. Montoya* (2004) 33 Cal.4th 1031, 1034 (*Montoya*).)

In *Montoya*, our Supreme Court held " 'the crime of unlawfully taking a vehicle is not a lesser included offense of carjacking because a person can commit a carjacking without necessarily committing an unlawful taking of a vehicle.' " (*Montoya*, *supra*, 33 Cal.4th at p. 1038.) This is because, " '[c]arjacking is a crime against the possessor or passengers in a vehicle. [Unlawful taking of a vehicle] is a crime against ownership.' " "Applying the elements test to the two offenses here, the crime of unlawfully taking a vehicle is not a lesser included offense of carjacking because a person can commit a carjacking without necessarily committing an unlawful taking of a vehicle." (*Id.* at p. 1035.)

Defendant argues *Montoya* does not apply here because this was a case of unlawfully driving a car, not unlawfully taking the car. But as discussed in *Montoya*, the relevant difference in the elements between the two charges is not whether the defendant engaged in driving or taking, it is from whom the defendant takes the car. (*Montoya*, *supra*, 33 Cal.4th at p. 1035.) In carjacking, the crime is committed against *any person* in possession of the car. That person may or may not also be the *owner*. In unlawful driving or taking the car, the defendant must deprive the car's *owner* of possession of the car. Given that unlawful driving or taking of a car is not a necessarily included lesser offense of carjacking, both convictions are permissible.

7

## II

### *Section 654*

Defendant next argues the trial court erred in not staying the sentences on certain of the related counts. As to the BMW, defendant claims the act of driving and receiving the stolen BMW formed the same course of conduct and indivisible objective of driving away with the BMW. As to the Mustang, defendant argues all five counts arising out of that transaction "stem from the same course of conduct and indivisible objective," and we should remand for the trial court to choose the unstayed count. The Attorney General concedes all charges related to the Mustang form one course of conduct, but argues the proper remedy is to stay counts 4, 5, 6, and 9, rather than remand. We agree with the Attorney General.

Section 654 provides in relevant part: "An act or omission that is punishable in different ways by different provisions of law may be punished under either of such provisions, but in no case shall the act or omission be punished under more than one provision." " 'Although section 654 literally applies only where multiple statutory violations arise out of a single "act or omission," it has also long been applied to cases where a "course of conduct" violates several statutes. [Citations.] A "course of conduct" may be considered a single act within the meaning of section 654 and therefore be punishable only once, or it may constitute a "divisible transaction" which may be punished under more than one statute.' " [Citation.] (*People v. Cruz* (2020) 46 Cal.App.5th 715, 736.) " 'Whether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the intent and objective of the actor. If all the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one.'" (*Ibid.*) This "is a question of fact for the trial court, and the trial court's findings will not be disturbed on appeal if they are supported by substantial evidence." (*People v. Kwok* (1998) 63 Cal.App.4th 1236, 1253.)

As it relates to the BMW, substantial evidence supports the trial court's implied finding that defendant engaged in more than a single act or course of conduct. For count 1, defendant unlawfully drove the BMW as identified by the officers for well over an hour on June 1, in a manner he admitted was an attempt to evade their surveillance.

While the prosecution argued to the jury the receiving stolen property charge as "kind of the flip side of count one," the record contains evidence of significant parts removed from the BMW located both in the back of the SUV associated with defendant (the shift selector), and at defendant's home (the floor mat, plastic pieces, the exhaust system, and its muffler). Officers testified it was common for thieves to strip stolen cars and to sell the stolen parts. This is especially true for catalytic converters, like the one missing from the BMW and found at defendant's home. Thus, the record supports the trial court's implicit conclusion defendant had different intents and objectives for count 1 and count 2.

Turning to the carjacking of the Mustang, we agree with defendant and the Attorney General that the crimes committed in quick succession as defendant jumped in the Mustang, backed into the tow truck driver, then drove away, giving rise to the five counts at issue here,[2] all arose out of a single course of conduct with the single intent and objective of gaining possession of the Mustang. Thus, assigning multiple punishments for this course of conduct was error under section 654.

As the trial court was advised, recent amendments to section 654 that took effect before defendant's sentencing gave the court the discretion to select for execution any available term of imprisonment, regardless of its comparative length, and to stay the other

---

[2] Carjacking (§ 215, subd. (a)), assault with a deadly weapon (§ 245, subd. (a)(1)), unlawful driving the car (Veh. Code, § 10851, subd. (a)), receiving the stolen car (§ 496d, subd. (a)) and the misdemeanor hit and run (Veh. Code, § 20002, subd. (a)) (counts 3, 4, 5, 6, and 9).

terms/sentences.  (§ 654, as amended by Stats. 2021, ch. 441, § 1.)  Absent evidence to the contrary, we presume the court knew and applied the governing law to its sentencing decisions.  (*People v. Gutierrez* (2014) 58 Cal.4th 1354, 1390.)  Where there is error in discretionary sentencing, the appropriate remedy is to remand for resentencing, unless the record clearly indicates remand would be an idle act as the court would have made the same sentencing choices absent the error.  (*Id.* at p. 1391.)

Here, in light of counsel's written and oral arguments to the trial court, we conclude the court's imposition of the 25-year sentence in conjunction with count 3 (the carjacking count and enhancements) and imposition of concurrent sentences on the remaining four counts arising from this incident indicates it understood it had discretion to choose the charge or charges upon which it could sentence defendant for this transaction, and it chose the charge that carried the longest sentence as the unstayed punishment.

The trial court's failure to stay the sentences on the other counts was error; however, the court's sentencing choices and remarks at sentencing clearly indicate the court would make the same sentencing choices upon remand if asked to consider this issue again.  In light of the numerous aggravating factors, the court had already exercised its discretion to impose an unstayed sentence on the carjacking count and to run the sentences on the remaining related counts concurrent to that lengthy sentence. Remanding to the trial court merely to have it repeat its choice of unstayed count and stay the remaining four sentences would be an idle act.  Instead, we will modify the judgment to stay the sentences imposed on counts 4, 5, 6, and 9 and direct amendment of the abstract of judgment.

## DISPOSITION

We modify the judgment to stay the sentences on counts 4, 5, 6, and 9. The trial court is directed to prepare an amended abstract of judgment and forward a certified copy to the Department of Corrections and Rehabilitation. The judgment is affirmed as modified.

　　　　　　　　　　　　　　　　　　　/s/
　　　　　　　　　　　　　　　　Duarte, J.


We concur:


　　　/s/
Mauro, Acting P. J.


　　　/s/
McAdam, J.*

---

* Judge of the Yolo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

11